SPENCER P. HUGRET (SBN 240424)
shugret@grsm.com
ROBERT C. RODRIGUEZ (SBN 224254)
rrodriguez@grsm.com
GORDON & REES LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA  94111
Telephone:  (415) 986-5900
Facsimile:  (415) 986-8054

Attorneys for Defendants
FORD MOTOR COMPANY and
BLUESKY AUTO GROUP, INC. dba
PORTERVILLE FORD

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| CHRISTOPHER J. VANNI,<br><br>                    Plaintiff,<br><br>    vs.<br><br>FORD MOTOR COMPANY, a Delaware Corporation; BLUESKY AUTO GROUP, INC., a California Corporation, dba PORTERVILLE FORD; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No.<br><br>**DEFENDANTS' NOTICE OF REMOVAL**<br><br>Sup Ct Complaint: February 5, 2018 |

## NOTICE OF REMOVAL

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendants Ford Motor Company ("Ford") and Bluesky Auto Group, Inc. dba Porterville Ford, by their counsel GORDON REES SCULLY MANSUKHANI LLP, hereby remove to this court, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, based on diversity of citizenship, the claims pending as Case No. BCV-18-100247 of the Superior Court of California, County of Kern.  In support of this removal, Defendants state as follows:

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

## I.    THE REMOVED CASE

1. The removed case is a civil action commenced in the Superior Court of California, County of Kern, by Plaintiff Christopher J. Vanni against Ford, entitled *Vanni v. Ford Motor Company*, Case No. BCV-18-100247 (the "State Action"). The two named Defendants are Ford and Bluesky Auto Group, Inc. dba Porterville Ford ("Porterville Ford")[1]. Ford is defending and indemnifying Porterville Ford in this matter.

2. Plaintiff filed the State Action on February 5, 2018, asserting breach of warranty and fraudulent inducement claims against Ford. *See* Complaint.

## II.    PROCEDURAL REQUIREMENTS

3. Defendants have thirty (30) days from the date of service or receipt of a copy of the Complaint to remove a case. 28 U.S.C. § 1446(b). Defendants were served with a copy of the Complaint on February 5, 2018. This Notice of Removal is therefore timely filed.

4. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders for the State Action in Ford's possession are contained in **Exhibits A-C** filed herewith.

5. Pursuant to 28 U.S.C. § 1446(a), venue is proper in the Eastern District of California because this district embraces the place in which the removed action has been pending.

6. Pursuant to 28 U.S.C. § 1446(d), a true and correct copy of this Notice of Removal will be filed with the Superior Court of California, County of Tulare promptly after filing of same in this Court.

---

[1] While Porterville Ford is named as a defendant, there are no causes of action asserted against the dealership aside from a negligent repair claim; all other causes of action, as stated in Plaintiff's Complaint, are asserted against Ford only.

DEFENDANTS' NOTICE OF REMOVAL

7. Pursuant to 28 U.S.C. § 1446(d), written notice of filing of this Notice of Removal will be given to all adverse parties promptly after the filing of same in this Court.

8. If any question arises as to the propriety of the removal of this action, Ford requests the opportunity to conduct discovery, brief any disputed issues and to present oral argument in favor of its position that this case is properly removable.

9. Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of Ford's right to assert defenses including, without limitation, the defenses of (i) lack of jurisdiction over person, (ii) improper venue and/or *forum non conveniens*, (iii) insufficiency of process, (iv) insufficiency of service of process, (v) improper joinder of claims and/or parties, (vi) failure to state a claim, (vii) failure to join indispensable party(ies), or (viii) any other procedural or substantive defense available under state or federal law.

## III.    THE AMOUNT IN CONTROVERSY REQUIREMENT IS MET

10. The amount in controversy in this action exceeds $75,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332.

11. The removing party's initial burden is to "file a notice of removal that includes 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'"  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014)).  "By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a)" which requires only that the grounds for removal be stated in a "short and plain statement."  *Dart*, 135 S. Ct. at 553.

12. Generally, a federal district court will first "consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy."  *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 690 (9th Cir. 2006) (internal citation omitted).  But a defendant may remove a suit to federal court notwithstanding the

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

DEFENDANTS' NOTICE OF REMOVAL

failure of the plaintiff to plead the required amount.  Absent the facial showing from the complaint, the court may consider facts averred in the removal petition.  *Id.*  Next, if the defendant's allegation(s) regarding the amount in controversy is challenged, then "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Ibarra*, 775 F.3d at 1195.  At that time, "it may be appropriate to allow discovery relevant to [the] jurisdictional amount prior to remanding." *Abrego*, 443 F.3d at 691 (internal citation omitted).

13. Ford disputes that it is liable for any damages whatsoever to Plaintiff. Nevertheless, Ford can demonstrate that the amount in controversy exceeds $75,000 under the "preponderance of the evidence" standard.  *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007).  The standard requires only that the removing party present evidence that "it is more likely than not" that the amount in controversy is satisfied.  *Id.*

14.  In the case at bar, the Plaintiff seeks monetary relief.  This is a products liability case.  Plaintiff alleges breach of express and implied warranties under the Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1790 *et seq.*), and fraudulent inducement (Compl. ¶¶ 108-157).[2]

15.  Plaintiff alleges that on August 14, 2012, he purchased a new 2012 Ford Focus for $24,519.45,[3] and that the Powershift transmission is defective because it "consistently slips, bucks, kicks, jerks, harshly engages," among other alleged problems.  (Compl. ¶¶ 9, 22).  Plaintiff further alleges he took the Focus in for multiple repairs between August 24, 2014 and August 17, 2017, and that the "Powershift Transmission could not be repaired."  (Compl. ¶¶ 73–76, 84).

---

[2] Once again, Plaintiff alleges a single cause of action against Porterville Ford; all causes of action are against Ford only, and the prayer for judgment seeks judgment against Ford only (*Id.*; Prayer to Complaint).

[3] The calculation of vehicle price is made by adding the "Down Payment" and "Amount Financed," as represented in the Plaintiff's Sale Contract.  *See* Declaration of Robert C. Rodriguez ("Rodriguez Decl."), filed concurrently herewith.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

16. Plaintiff further alleges he is entitled to relief under the Song-Beverly Act including: attorney's fees, restitution, reimbursement of the price paid for the vehicle, costs, expenses, all incidental, consequential, and general damages, as well as a civil penalty of up to two times the amount of actual damages. (Compl. ¶¶ 119–122). Plaintiff also seeks "rescission of the [purchase] contract" under the Song-Beverly Act (*Id.* ¶134). Lastly, Plaintiff seeks punitive damages. (*Id.* Prayer for Relief).

17. The amount in controversy calculation includes punitive damages. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). Civil penalties under the Song-Beverly Act are also properly included in the calculation. *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1009 (N.D. Cal. 2002). So too are reasonable estimates of attorney's fees. *Id.* at 1011.

18. The Song-Beverly Act allows for the recovery of attorney's fees, which regularly exceed $100,000.00. (Declaration of Spencer Hugret ("Hugret Decl."), ¶¶ 5-6, filed concurrently herewith).

19. If Plaintiff were to prevail on his Song-Beverly claims, he could be awarded damages of $73,558.35 or more if awarded statutory civil penalties. As such, even *before* taking punitive damages or attorney fees into account, the amount in controversy already exceeds $73,500, which includes just the purchase price plus a 2X civil penalty pursuant to the Song-Beverly Act.

20. Thus, the total amount in controversy exceeds $73,500.00, even *before* adding Plaintiff's claim for punitive damages *or* attorney fees. Accordingly, the amount in controversy is easily satisfied in this case. (Rodriguez Decl. ¶ 6; Cal. Civ. Code § 1793.2(d)(2)(B)-(C); § 1794(c)).

///

///

///

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

## IV.    <u>DIVERSITY OF CITIZENSHIP EXISTS</u>

21.  Plaintiff is and was at the time of filing of the Complaint, both a citizen and resident of California.  (Compl. ¶ 2).

22.  Ford is, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of Delaware with its principal place of business in Michigan.  This Court can take judicial notice of these facts.  *See* Excerpt from Ford's 2017 Form 10-K filing, Exhibit B to Rodriguez Decl.; *see also* Fed. R. Evid. 201(b)(2) (courts may judicially notice facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.")

### A.    Defendant Porterville Ford and Fraudulent Joinder

23.   As indicated, Porterville Ford is a California corporation.  Defendants contend that Plaintiffs fraudulently joined Porterville Ford in this products liability case for no reason other than to defeat diversity jurisdiction and prevent removal of the action to federal court.  *See In re Briscoe*, 448 F. 3d 201, 217 (3d Cir. 2006) ("[fraudulent joinder exists where] there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment.").  Here, Plaintiffs have sued Porterville Ford for *only* "negligent repair," the sixth cause of action of the Complaint – which again, is a products liability, fraud, and breach of warranty case against Ford Motor Company.  Ford believes Plaintiff has no intention of prosecuting the negligence claim against Porterville Ford[4], and that in fact the negligent repair claim was only brought to defeat the claim of diversity and removal to Federal Court, due to the fact that Ford has recently sought an MDL within the federal court.   (Hugret Decl. at ¶7).  Indeed, Ford's counsel's vast litigation experience in opposing automotive product liability cases (and in particular matters

---

[4] Indeed, a review of the Complaint's allegations regarding Porterville Ford shows that they are nothing more than bare-boned, non-specific allegations of duty and breach.

DEFENDANTS' NOTICE OF REMOVAL

filed by Mr. Mikhov's firm), has been that individual Ford dealerships have *not* been regularly sued. (*Id.*)  Because Plaintiff's joinder of Porterville Ford is fraudulent, this Court has the jurisdiction to accept this matter, as absent Porterville Ford, complete diversity exists for purposes of 28 U.S.C. § 1332 jurisdiction.

> **B.**     Porterville Ford is a dispensable party pursuant to FRCP Rule 21 and may be severed from the action

24.   Alternatively, as Porterville Ford is a nondiverse dispensable party pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 21, this Court may sever the claims against Porterville Ford, allowing the remainder of the case to properly remain in federal court.  Pursuant to FRCP Rule 21, a court "may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party," in order to preserve federal jurisdiction.  *See Newman-Green, Inc. v. Alfonzo-Larrain* 490 U.S. 826, 832 (1989) ("it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered.")   Here, we have a products liability action and complaint against Ford, and one simple negligent repair claim again a Ford servicing dealership.  As such, the products liability, warranty, and fraud claims against Ford have very different legal elements than the "negligent repair" claim, and rely and an entirely distinct factual basis.  Similar to these facts is that of a plaintiff suing a manufacturer of a medical device or product under products liability theories, while also suing the physicians and healthcare professionals who used the product during the plaintiff's surgery, for medical malpractice, in order to defeat diversity.  This was in fact the scenario in *Mayfield v. London Women's Care,* PLLC 2015 WL 3440492 (E.D. Ky. May 28, 2015), where the federal court severed the medical malpractice claim, holding the plaintiffs would be able to obtain relief in state court: "Just as no one from Ethicon was involved with Mayfield's surgery, Dr. Mechas has nothing to do with the design, manufacture or sale of a single pelvic mesh implant… if [the healthcare defendants] are severed from this case, they will be equally capable of

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

protecting their interests in state court…[and]..will not expose Ethicon to double or inconsistent obligations in federal court.," citing to the U.S. Supreme Court Case of *Temple v. Synthes Corp*. 498 U.S. 5,7 (1990) (finding the doctor who performed an implant surgery was not a necessary party in a products liability action against the manufacturer of the implanted medical device.)   Similarly here, the service technicians at Porterville Ford who came in contact with Plaintiff's Ford Focus have nothing to do with the design of the vehicle or its counterparts, nor the manufacture or sale of the vehicle or its counterparts.[5]   Furthermore, Plaintiff will be able to protect his interests as related to Porterville Ford in state court, and not expose Ford to double or inconsistent obligations.  Simply stated, the claims against Ford are too distinct from the simple negligence action against Porterville Ford to not sever the dealership from the federal action.

25. For the reasons stated above, there is diversity of citizenship between Plaintiff, a California citizen, and Ford, a citizen of Michigan and Delaware.  While Defendant Porterville Ford is a California citizen, the Court should have subject matter jurisdiction over this dispute under 28 U.S.C. § 1332, as Porterville Ford was fraudulently joined by Plaintiff.  Alternatively, the court may sever defendant Porterville Ford and the claims against it, as a dispensable and nondiverse party pursuant to FRCP 21.

///

///

///

///

///

---

[5] Porterville Ford did not sell the subject vehicle.

DEFENDANTS' NOTICE OF REMOVAL

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

## <u>CONCLUSION</u>

26. Consequently, the State Action may be removed to this Court by Ford in accordance with the provisions of 28 U.S.C. § 1441 because: (i) this action is a civil action pending within the jurisdiction of the United States District Court for the Southern District of California, (ii) the action is between citizens of different states, and (iii) the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

Dated:   March 7, 2018

GORDON REES SCULLY MANSUKHANI LLP

By:   /s/ Spencer P. Hugret
Spencer P. Hugret
Robert C. Rodriguez
Attorneys for Defendant
FORD MOTOR COMPANY and
PORTERVILLE FORD

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

# CERTIFICATE OF SERVICE

*CCP §§ 1011, 1013, 1013(a) and 2015.5; CRC 2.306)*
*Christopher J. Vanni v. Ford Motor Company, et al.*
Kern County Superior Court Case No.  BCV-18-100247
*USDC, Eastern District, Case No.*

I am employed in the County of San Francisco, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 275 Battery Street, 20th Floor, San Francisco CA 94111.

On the date set forth below, I served the foregoing document(s) described as:

**DEFENDANTS' NOTICE OF REMOVAL**

on the interested parties in this action as follows:

| | |
|---|---|
| Steve Mikhov, Esq. <br> Lauren Ungs, Esq. <br> **KNIGHT LAW GROUP, LLP** <br> 1801 Century Park East, Suite 2300 <br> Los Angeles, CA  90067-2325 <br> Tel:  (310) 552-2250 <br> Fax:  (310) 552-7973 <br> Email: marko@omlawllp.com <br> Email: laurenu@omlawllp.com | ***Attorneys for Plaintiff*** <br> ***CHRISTOPHER VANNI*** |

☒   by placing a true copy thereof enclosed in a sealed envelope, at a station designated for collection and processing of envelopes and packages for overnight delivery by FedEx as part of the ordinary business practices of Gordon & Rees LLP described below, addressed as follows:

Executed on **March 7, 2018**, at San Franciso, California.

_/s/  Spencer P. Hugret___
Spencer P. Hugret

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1151621/37102869v.1

# EXHIBIT A

## CT Corporation

**Service of Process Transmittal**
02/05/2018
CT Log Number 532739780

| | |
|---|---|
| **TO:** | Chris Dzbanski<br>Ford Motor Company<br>1 American Rd Whq 421-E6<br>Dearborn, MI 48126-2701 |
| **RE:** | **Process Served in California** |
| **FOR:** | Ford Motor Company  (Domestic State: DE) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Christopher J. Vanni, Pltf. vs. Ford Motor Company, etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, exhibit(s), Cover Sheet, Instructions |
| **COURT/AGENCY:** | Kern County - Superior Court - Bakersfield, CA<br>Case # BCV18100247 |
| **NATURE OF ACTION:** | Product Liability Litigation - Lemon Law - 2012 Ford Focus, VIN: 1FAHP3K20CL468382 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 02/05/2018 at 15:00 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | Steve Mikhov<br>Knight Law Group, LLP<br>1801 Century Park East, Suite 2300<br>Los Angeles, CA 90067<br>310-552-2250 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 02/06/2018, Expected Purge Date: 02/11/2018<br><br>Image SOP<br><br>Email Notification,  Chris Dzbanski  cdzbansk@ford.com<br><br>Email Notification,  Mary Ann MacKinnon  mmackin1@ford.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 818 West Seventh Street<br>Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
FORD MOTOR COMPANY, a Delaware Corporation; BLUESKY AUTO
GROUP, INC., a California Corporation,dba PORTERVILLE FORD; and
DOES 1 through 10, inclusive,
**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

CHRISTOPHER J. VANNI

<table>
<tr><td>
<i>FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE)</i><br><br>
<b>ELECTRONICALLY FILED</b><br>
2/5/2018<br>
<b>Kern County Superior Court</b><br>
<b>Terry McNally</b><br><br>
<b>By Vanessa Cofield, Deputy</b>
</td></tr>
</table>

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

<table>
<tr>
<td>The name and address of the court is:<br>
<i>(El nombre y dirección de la corte es):</i><br>
Metropolitan Division<br>
1415 Truxtun Avenue<br>
Bakersfield, CA 93301</td>
<td>CASE NUMBER:<br><i>(Número del Caso):</i><br><br>BCV-18-100247</td>
</tr>
</table>

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Knight Law Group, LLP
1801 Century Park East, Suite 2300, Los Angeles, CA 90067
(310) 552-2250

<table>
<tr>
<td>DATE:<br><i>(Fecha)</i>  2/5/2018</td>
<td>TERRY MCNALLY</td>
<td>Clerk, by<br><i>(Secretario)</i>  /s/ Vanessa Cofield</td>
<td>, Deputy<br><i>(Adjunto)</i></td>
</tr>
</table>

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* FORD MOTOR COMPANY, a Delaware Corporation

   under: ☒ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

ELECTRONICALLY FILED
2/5/2018 8:00 AM
Kern County Superior Court
Terry McNally
By Vanessa Cofield, Deputy

**KNIGHT LAW GROUP, LLP**
Steve Mikhov (SBN 224676)
1801 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

Attorney for Plaintiff,
CHRISTOPHER J. VANNI

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF KERN

|  |  |
|---|---|
| **CHRISTOPHER J. VANNI,** | Case No.:  BCV-18-100247 |
|  | Unlimited Jurisdiction |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | 1. **BREACH OF EXPRESS WARRANTY – VIOLATION OF SONG-BEVERLY ACT**<br>2. **BREACH OF IMPLIED WARRANTY – VIOLATION OF SONG-BEVERLY ACT**<br>3. **FRAUDULENT INDUCEMENT – CONCEALMENT**<br>4. **FRAUDULENT INDUCEMENT – INTENTIONAL MISREPRESENTATION**<br>5. **FRADULENT INDUCEMENT – NEGLIGENT MISREPRESENTATION**<br>6. **NEGLIGENT REPAIR** |
| **FORD MOTOR COMPANY, a Delaware Corporation; BLUESKY AUTO GROUP, INC., a California Corporation, dba PORTERVILLE FORD; and DOES 1 through 10, inclusive,** | |
| Defendants. | |
|  | *Assigned for All Purposes to the Honorable* . |
|  | Department |

-1-

Plaintiff, CHRISTOPHER J. VANNI, alleges as follows against Defendants, FORD MOTOR COMPANY, a Delaware Corporation (hereinafter "Ford"); BLUESKY AUTO GROUP, INC., a California Corporation, dba PORTERVILLE FORD ("PORTERVILLE FORD"); and DOES 1 through 10 inclusive, on information and belief, formed after an inquiry reasonable under the circumstances:

## DEMAND FOR JURY TRIAL

1.      Plaintiff, CHRISTOPHER J. VANNI, hereby demands trial by jury in this action.

## GENERAL ALLEGATIONS

2.      Plaintiff CHRISTOPHER J. VANNI is an individual residing in the City of Porterville, County of Tulare, and State of California.

3.      Defendant FORD MOTOR COMPANY is and was a Delaware Corporation registered to do business in the State of California with its registered office in the City of Los Angeles, County of Los Angeles, and State of California.

4.      Defendant PORTERVILLE FORD is and at all relevant times was a California Corporation registered to do business in the State of California, with its principal place of business in the City of Porterville, County of Tulare, and State of California, and its registered agent for service of process in the City of Porterville, County of Tulare, and State of California.

5.      This cause of action arises out of the warranty obligations of Ford Motor Company for a vehicle purchased by Plaintiff and for which Ford Motor Company issued a written warranty. Plaintiff also alleges that Ford concealed a known defect from Plaintiff. The defective component is called the DPS6 PowerShift Transmission ("PowerShift Transmission"). The PowerShift Transmission is an "automated manual" transmission used by Ford in their 2011-2013 Ford Fiesta vehicles and 2012-2014 Ford Focus vehicles. Ford also misrepresented to Plaintiff the type of transmission the PowerShift transmission is/was.

6.      Plaintiff does not know the true names and capacities, whether corporate, partnership, associate, individual or otherwise of Defendant issued herein as Does 1 through 10, inclusive, under the provisions of section 474 of the California Code of Civil Procedure. Defendant Does 1 through 10, inclusive, are in some manner responsible for the acts, occurrences and transactions set forth

-2-

Vanni v. Ford - COMPLAINT

1    herein, and are legally liable to Plaintiff.  Plaintiff will seek leave to amend this Complaint to set
2    forth the true names and capacities of the fictitiously named Defendant, together with appropriate
3    charging allegations, when ascertained.

4        7.    All acts of corporate employees as alleged were authorized or ratified by an officer,
5    director or managing agent of the corporate employer.

6        8.    Each Defendant whether actually or fictitiously named herein, was the principal, agent
7    (actual or ostensible), or employee of each other Defendant and in acting as such principal or within
8    the course and scope of such employment or agency, took some part in the acts and omissions
9    hereinafter set forth by reason of which each Defendant is liable to Plaintiff for the relief prayed for
10   herein.

11       9.    On August 14, 2012, Plaintiff purchased a new 2012 Ford Focus, VIN:
12   1FAHP3K20CL468382, (hereinafter "the Vehicle" or "Subject Vehicle"), and express warranties
13   accompanied the sale of the vehicle to Plaintiff by which Ford Motor Company undertook to
14   preserve or maintain the utility or performance of Plaintiff's vehicle or provide compensation if there
15   was a failure in such utility or performance. The sales contract is attached and incorporated by its
16   reference as Exhibit 1.

17       10. The vehicle was delivered to Plaintiff with serious defects and nonconformities to warranty
18   and developed other serious defects and nonconformities to warranty including, but not limited to,
19   transmission issues.

20       11.    Plaintiff hereby revokes acceptance of the sales contract.

21       12.    Plaintiff hereby demands trial by jury in this action.

22                    **The DPS6 PowerShift Transmission Defect**

23       13.    The Vehicle was manufactured by Ford and delivered to Plaintiff with a PowerShift
24   Transmission.  Ford offered the PowerShift Transmission as the sole "automatic transmission"
25   option in the Subject Vehicle.

26       14.    The PowerShift Transmission is neither a traditional manual transmission, nor a typical
27   automatic transmission, but is a computerized "automated manual" transmission.

28   ///

---

-3-

Vanni v. Ford - COMPLAINT

15.    Traditional manual transmissions use a driver-controlled clutch.  By pressing and releasing a foot pedal, the driver causes the clutch to mechanically engage and disengage the engine from the transmission, allowing the vehicle to travel continuously while the driver manually changes gears. Because a clutch allows for transfer of virtually all of the engine's power to the transmission, a properly designed and operating manual transmission is highly efficient. However, operation of a manual transmission can be difficult for less experienced drivers, and can result in the vehicle jerking or shuddering during improper operation, manual transmissions are disfavored by some consumers.

16.    In contrast, typical automatic transmissions free the driver from operating the clutch through the use of a fluid-filled device called a torque converter.  The torque converter substitutes for the manual transmission's clutch, transmitting power from the engine to the transmission through a fluid medium.

17.    While automatic transmissions offer increased comfort and convenience, they are generally less fuel efficient and slower-shifting than manual transmissions because the torque converter transfers power through fluid less efficiently than a mechanical clutch.

18.    Ford marketed and sold its PowerShift Transmission as an automatic transmission that offered the "best of both worlds" combining a manual transmission's fuel economy with an automatic transmission's ease of operation and shift quality.

19.    Ford's PowerShift Transmission, while sometimes referred to as an automatic, is actually a set of computerized manual transmissions.  It lacks a torque converter, instead using two clutches to mechanically engage and disengage the engine and transmission.  Whereas similar "automated manual" transmissions on the market use "wet" clutches bathed in oil, Ford's PowerShift Transmission clutches lack the oil pumps and other components of a wet clutch system, and instead operate "dry."

20.    Ford designed the PowerShift Transmission in an effort to meet heightened governmental and consumer expectations for fuel economy, performance, convenience, and efficiency.  Ford designed and marketed its PowerShift Transmission as a more advanced and fuel efficient automatic transmission. According to Ford's press release dated March 10, 2010, "PowerShift with dry-clutch facings and new energy-saving electromechanical actuation for clutches and gear shifts saves

-4-

weight, improves efficiency, increases smoothness, adds durability and is sealed with low-friction gear lubricant for the life of the vehicle. The transmission requires no regular maintenance."

21.    In theory, a computer-controlled, automated manual transmission may provide the convenience of an automatic transmission without sacrificing the fuel efficiency and shift speed of a manual transmission.  In practice, however, Ford's PowerShift Transmission is plagued by numerous problems and safety concerns.

22.    Plaintiff is informed and believe, and based thereon allege, that the PowerShift Transmission is defective in its design and/or manufacture in that, among other problems, the transmission consistently slips, bucks, kicks, jerks, harshly engages, has premature internal wear, sudden acceleration, delay in downshifts, delayed acceleration, difficulty stopping the vehicle, and, eventually, premature transmission failure (the "Transmission Defect").

23.    The Transmission Defect causes unsafe conditions in vehicles equipped with the PowerShift Transmission, including, but not limited to suddenly lurching forward, delayed acceleration, and sudden loss of forward propulsion.  These conditions present a safety hazard because they severely affect the driver's ability to control the car's speed, acceleration, and deceleration. For example, these conditions make it difficult to safely merge into traffic. Even more troubling, the Transmission Defect can cause the vehicle to fail to downshift and decelerate, but instead continue to transfer power to the transmission and even surge the engine's RPMs, when the brakes are depressed.  As a result, drivers of vehicles equipped with the PowerShift Transmission have reported their vehicles lurching forward into intersections at red lights due to the failure of their braking efforts to stop the car.

24.    On information and belief, the Transmission Defect also causes premature wear to the PowerShift Transmission's clutch plates and other components, which results in premature transmission failure and requires expensive repairs, including premature transmission replacement.

25.    As early as 2010, Ford knew or should have known that the PowerShift Transmission contained one or more design and/or manufacturing defects that negatively affect drivability and cause safety hazards.

///

26.    Plaintiff is informed and believe, and based thereon allege, that prior to sale of the Vehicle, Ford knew, or should have known, about the Transmission Defect through its exclusive knowledge of non-public, internal data about the Transmission Defect, including: pre-releasing testing data; early consumer complaints about the Transmission Defect to Ford's dealers who are Ford's agents for vehicle repairs; dealership repair orders; testing conducted in response to those complaints; technical service bulletins ("TSBs") developed by Ford and communicated to its dealers and authorized repair facilities; the existence of substantially identical defects in substantially identical European and Australian model vehicles released prior to Ford's marketing and sale of the PowerShift Transmission domestically; and other internal sources of information possessed exclusively by Ford and its agents. Nevertheless, Ford and its agents have actively concealed the Transmission Defect, and failed to disclose this defect to Plaintiff at the time of purchase of the Vehicle or thereafter.

27.    Before offering vehicles equipped with the PowerShift Transmission (which Ford internally refers to as the "DPS6 automatic transmission") in the United States, Ford offered substantially identical vehicles, equipped with a similar dual-clutch transmission, in Europe and Australia. Although the domestic version of the transmission utilizes dry clutches as opposed to the European and Australian version's wet clutches, Ford acknowledges that the transmission offered for sale in the United States is "derivative" of the design from the European and Australian models. European and Australian versions of the dual-clutch transmission suffered from similar defects known to Ford as alleged herein.

28.    In addition to obtaining years of feedback and testing from its European and Australian dual-clutch transmission, according to Ford, its team:

> "logged approximately three years or 6,000 man-hours of computer aided mathematical modeling, simulation and analysis of engine speeds, torque and clutch capacity in only 24 months real time to prove the THF concept was production ready."

29.    In addition, Ford boasted about its extensive testing of the vehicle in its marketing brochures that were publicly distributed:

///

-6-

Vanni v. Ford - COMPLAINT

"Obsessive was the starting point.  You'll enjoy every drive because Focus engineers obsessed over every last detail.  Focus was thoroughly tested in an assortment of harsh environments and situations to make sure you get a car beyond your wildest imagination."

30.    The PowerShift Transmission uses a program called Torque Hole Filling ("THF"), which is a combination of computer algorithms and computer aided tools to fill the torque hole, or what is more commonly perceived as a hesitation, while shifting.  Ford claimed its THF technology would create a smoother driving experience for the customer to promote sales.

31.    Despite these claims, consumers have not experienced a smoother driving experience from THF or any other technology incorporated in the PowerShift Transmission.  Multiple reviews in automotive journals and customer complaints have documented and confirmed that the PowerShift transmission has continuously exhibited the defects, malfunctions, maladjustments, and nonconformities that the Plaintiff now complains of.

32.    In a 2011 *New York Times* review of the Ford Focus, the reviewer stated that "Ford programmed the PowerShift Dual-clutch transmission to change gears in odd and infuriating ways" and that "[t]he transmission is often in the wrong gear at the wrong time, resulting in jerks, pauses and lethargic acceleration."

33.    In response to these criticisms, Greg Burgess, an engineer at Ford, conceded in the same *New York Times* article that "[i]t is quite a challenge to deliver something that is very, very fuel efficient and yet feels like a conventional automatic, and there are some balances and some trade-offs that we make."

34.    In response to complaints about the Transmission Defect, in 2010 and 2011, Ford issued several Technical Service Bulletins ("TSBs") to its dealers and authorized repair facilities acknowledging defects in the PowerShift Transmission.  Ford's TSB from September 2010, covering the 2011 Ford Fiesta, informed dealers and service personnel of "concerns such as no engagement or intermittent no engagement in Drive or Reverse when shifting from Park to Drive or Reverse, grinding noise during engagement, and/or check engine light with transmission control module (CM) diagnostic trouble code…"

35.    Similarly, Ford's TSB released on January 1, 2011, covering the 2011 Ford Fiesta with the PowerShift Transmission, informs dealers and service personnel of problems with the PowerShift Transmission causing "a loss of power, hesitation, surge, or lack of throttle response while driving."

36.    Ford's TSB from March 31, 2011 also covering the 2011 Ford Fiesta, informs dealers of problems where the PowerShift Transmission "exhibit[s] a rattle/grind noise in reverse only."

37.    Ford issued two separate TSBs in May 2011, both covering the Ford Fiesta. These TSBs addressed problems with the PowerShift Transmission including "concerns in Drive or Reverse when shifting from Park to Drive or reverse, no engagement, delayed engagement, intermittent engagement, noise during engagement…"

38.    Another Ford TSB released in September 2011 advised dealers to reprogram the transmission computer if 2011 Ford Fiesta owners complained about "hesitation when accelerating from a low speed after coast down, harsh or late 1-2 upshift, harsh shifting during low-speed tip-in or tip-out maneuvers and/or engine r.p.m. flare when coasting to a stop."

39.    The 2012 Ford Focus was the subject of a September 2011 Ford TSB, which informed dealers and service personnel of transmission problems including: "RPM flare on deceleration coming to a stop, rough idle on deceleration coming to a stop, intermittent engine idle fluctuations at a stop, intermittent vehicle speed control inoperative, intermittent harsh engagement/shift…"

40.    In May of 2012, Ford issued a "Customer Satisfaction Program: Program Number 12B37." In a letter sent to 2012 Ford Focus drivers, Ford indicated that drivers "may experience rough or jerky automatic transmission shifts. In addition, the vehicle may experience roll back when the driver is transitioning from the brake pedal to the accelerator pedal while on a slight incline." Significantly, Ford did not issue a recall and did not warn drivers of the safety risks associated with these known problems.

41.    Because Ford will not notify the public that the transmission is defective, Plaintiff (as well as members of the general public) is subjected to dangerous driving conditions that often occur without warning.

///

42. Ford knew about, and concealed, the Transmission Defect present in the Vehicle, along with the Transmission Defect's attendant dangerous safety and drivability problems, from Plaintiff at the time of sale, repair, and thereafter. In fact, instead of repairing the defects in the PowerShift Transmission, Ford either refused to acknowledge their existence, or performed superficial and ineffectual software upgrades that simply masked the symptoms of the Transmission Defect.

43. If Plaintiff knew about these defects at the time of sale, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it.

44. As a result of Plaintiff's reliance on Ford and its agent's omissions and/or misrepresentations, Plaintiff suffered an ascertainable loss of money, property, and value to the Vehicle. Additionally, as a result of the Transmission Defect, Plaintiff were harmed and suffered actual damages in that the Vehicle's transmission is substantially certain to fail before its expected useful life has run.

**Ford Had Exclusive Knowledge of the Transmission Defect**

45. Ford had superior and exclusive knowledge of the Transmission Defect, and knew or should have known that the Transmission Defect was not known or reasonably discoverable by Plaintiff, before Plaintiff purchased the Vehicle.

46. Plaintiff is informed and believes and based thereon alleges that before Plaintiff purchased the Vehicle, and since at least 2010, Ford knew about the Transmission Defect through sources not available to consumers, including pre-release testing data, early consumer complaints about the transmission defects to Ford and its dealers, testing conducted in response to those complaints, high failure rates and replacement part sales data, aggregate data from Ford dealers, among other internal sources of aggregate information about the problem including, but not limited to, similar defects in the substantially identical European and Australian models.

47. Before the Vehicle was available for sale in the United States, Ford offered the same vehicles, equipped with a similar dual-clutch transmission, in Europe and Australia. Although the United States version utilizes dry-clutches as opposed to the European and Australian version's wet-clutches, Ford acknowledged in its own press release that the transmission offered for sale in the United States is a "derivative" of the design of the European and Australian models. European and

-9-

Vanni v. Ford - COMPLAINT

Australian versions of the dual-clutch transmission suffered from similar defects as alleged herein.

48.    In addition to having access to years of analysis and feedback concerning the prior dual-clutch design, Ford also acknowledged in its own press releases the extensive pre-release testing and computer aided modeling, simulation, and analysis it conducted before bringing the PowerShift Transmission to the United States market.

49.    Ford was also aware of the Transmission Defect through the numerous complaints it received, both from consumers and from automotive journalists, who roundly criticized the performance of the PowerShift Transmission.  Indeed, a July 15, 2011 *New York Times* review of the Ford Focus criticized the PowerShift transmission's "jerks, pauses and lethargic acceleration." In that same article, Greg Burgess, a Ford engineer, admitted that Ford made "tradeoffs" in terms of drivability in order to "deliver something that is very, very fuel efficient."

50.    The review went on to state: "the logical explanation is that they [the Ford Engineers] were given a fuel economy target and no option but to meet it.  One might wonder why a top executive didn't step in to keep the transmission from reaching market."

51.    The existence of the Transmission Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a vehicle equipped with a PowerShift Transmission.  Had Plaintiff known that the Vehicle was equipped with a defective transmission, they would not have purchased the Vehicle equipped with the PowerShift Transmission or would have paid substantially less for it.

52.    Reasonable consumers, like Plaintiff, reasonably expect that a vehicle's transmission is safe, will function in a manner that will not pose a safety hazard, and is free from defects. Plaintiff further reasonably expect that Ford will not sell or lease vehicles with known safety defects, such as the Transmission Defect, and will disclose any such defects to its consumers when it learns of them. They did not expect Ford to fail to disclose the Transmission Defect to them and to continually deny the defect.

### Ford's Failure to Disclose the PowerShift Transmission Defect

53.    Ford has never disclosed the PowerShift Transmission defect to Plaintiff prior to the purchase of the Subject Vehicle or at any point during ownership of the Subject Vehicle, and Ford

has never instructed its dealerships to disclose the PowerShift Transmission defect to drivers or potential purchasers or lessees of vehicles equipped with the PowerShift Transmission.

54.    The PowerShift Transmission defect was not known or reasonably discoverable by the Plaintiff before purchase or lease, or without experiencing the defect first hand and exposing themselves to an unreasonable safety risk.

55.    Ford has remained silent even as it issued service bulletins, conducted internal investigations, and witnessed the failure of the transmission in earlier models of their vehicles distributed in Europe and Australia.

56.    Ford's refusal to publically acknowledge the defect has created widespread confusion. Ford's failure to notify consumers, dealerships, or auto-technicians prevents the PowerShift Transmission problem from being efficiently diagnosed. Drivers are led to believe that the problems they are experiencing with the transmission in their vehicle are actually "normal characteristics" of the transmission. Likewise, the lack of information makes it less likely that dealerships and auto-technicians will be able to diagnose and fix the PowerShift Transmission defect, or advise Plaintiff about the dangers of driving the Subject Vehicle.

57.    As a result of Ford's inaction and silence, Plaintiff was entirely unaware that Plaintiff purchased, and continues to drive, an unsafe and unreliable vehicle. As Ford knows, a reasonable person would consider the PowerShift Transmission defect important and would not purchase or lease a vehicle equipped with the PowerShift Transmission defect were the defect disclosed in advance, or would pay substantially less for the vehicle.

**Ford Has Actively Concealed the Transmission Defect**

58.    While Ford has been fully aware of the Transmission Defect affecting the Vehicle, Ford and its agents actively concealed the existence and nature of the Transmission Defect from Plaintiff at the time of purchase, repair, and thereafter.  Specifically, Ford failed to disclose or actively concealed, at and after the time of purchase or repair:

      a.  any and all known material defects or material nonconformity of the Vehicle, including the defects relating to the PowerShift Transmission;

      b.  that the Subject Vehicles, including their PowerShift Transmission, were not in good

working order, were defective, and were not fit for the intended purposes; and

c.   that Subject Vehicles and their PowerShift Transmission were defective, despite the fact that Ford learned of such defects through alarming failure rates, customer complaints, as well as through other internal sources, as early as 2010.

59.    As a result of the Transmission Defect, Ford was inundated with complaints regarding the PowerShift Transmission.  In July 2011, Ford implemented a communications strategy intended to enlighten consumers about some of the behavior characteristics of the PowerShift Transmission in order to "improve customer expectations."  In a memo with instructions sent to Ford dealers and service personnel, which Ford intended its dealers and service personnel to communicate to consumers, Ford noted that some of the common and normal characteristics of the PowerShift Transmission include double clicking metal sounds, coast down whine, low speed grinding, and reverse gear whine.

60.    However, despite Ford's public insistence that these behavioral characteristics of the PowerShift Transmission were normal, in 2010 and 2011, Ford issued several TSBs to its dealers in the United States acknowledging defects in the PowerShift Transmission.  Ford's TSB from September 2010, covering the 2011 Ford Fiesta, informs dealers how to address and attempt to repair the PowerShift Transmission in response to "concerns such as no engagement or intermittent no engagement in Drive or Reverse when shifting from Park to Drive or Reverse, grinding noise during engagement, and/or a check engine light with transmission control module (TCM) diagnostic trouble code…"

61.    Ford's TSB released on January 1, 2011, covering the 2011 Fiesta with the PowerShift Transmission, informs dealers of problems with the PowerShift Transmission causing "a loss of power, hesitation, surge, or lack of throttle response while driving."

62.    Ford's TSB from March 31, 2011, also covering the 2011 Ford Fiesta, informs dealers of problems where the PowerShift Transmission "exhibit[s] a rattle/grind noise in reverse only."

63.    Ford issued two separate TSBs in May 2011, both covering the Ford Fiesta.  These TSBs addressed problems with the PowerShift Transmission including "concerns in Drive or Reverse when shifting from Park to Drive or reverse, no engagement, delayed engagement, intermittent

1  engagement, noise during engagement…"

2  64.    On information and belief, another Ford TSB released in September 2011 advised dealers

3  to reprogram the transmission computer if 2011 Fiesta owners complained about "hesitation when

4  accelerating from a low speed after coast down, harsh or late 1-2 upshift, harsh shifting during low-

5  speed tip-in or tip-out maneuvers and/or engine r.p.m. flare when coasting to a stop."

6  65.    The 2012 Ford Focus was the subject of a Ford TSB in September 2011, which informed

7  dealers of transmission problems including: "RPM flare on deceleration coming to a stop, rough idle

8  on deceleration coming to a stop, intermittent engine idle fluctuations at a stop, intermittent vehicle

9  speed control inoperative, intermittent harsh engagement/shift…"

10  66.    In December of 2011, *Motor Trend* magazine called these efforts by Ford a "stealth

11  upgrade" and noted that while "[t]here's no official recall or service campaign… anybody who

12  complains or requests an upgrade at the dealership can have their powertrain control computer re-

13  flashed."

14  67.    On information and belief, the software upgrades recommended and encouraged by the

15  various TSBs issued by Ford were completely ineffective at addressing the Transmission Defect.

16  68.    When consumers present vehicles equipped with the PowerShift Transmission to an

17  authorized Ford dealer for repair to the transmission, rather than inform consumers of the

18  Transmission Defect or conclusively repair the problem under warranty, Ford's dealers and

19  authorized repair facilities either inform consumers that their vehicles are functioning properly, or

20  perform superficial and ineffectual software updates that delay or mask the manifestation of the

21  Transmission Defect in an attempt to avoid more comprehensive and expensive repairs or

22  replacements under the warranty.

23  69.    To this day, Ford still has not notified Plaintiff that the Vehicle suffers from a systemic

24  defect that causes the transmission to malfunction.

25  **PLAINTIFF'S EXPERIENCES**

26  70.    The Vehicle was equipped with a DPS6 Ford PowerShift Transmission.

27  71.    On or about August 14, 2012, Plaintiff visited Jim Burke Ford in Bakersfield, California

28  in hopes of purchasing a new Ford Focus vehicle. Plaintiff walked the dealership in search of a

1    vehicle to meet Plaintiff's needs, assisted by a salesperson. Plaintiff was specifically searching for a

2    Ford Focus vehicle with an automatic transmission for a smoother and more effortless drive. In

3    searching the car inventory on the car lot, Plaintiff reviewed the window stickers of multiple Ford

4    Focus vehicles that caught his eye. The window stickers on these vehicles identified them as having

5    an automatic transmission. Plaintiff identified a 2012 Ford Focus he was interested in purchasing.

6    Plaintiff's conversations with the salesperson, the window sticker on the vehicle, and a test drive of

7    the vehicle all reinforced Plaintiff's belief that the Vehicle was in fact equipped with an automatic

8    transmission. The salesperson never disclosed to Plaintiff that the vehicle was not actually equipped

9    with an automatic transmission. Plaintiff relied on the statements on the window sticker and

10    marketing materials they had received about the Ford Focus.

11        72.    Prior to purchasing the Vehicle, Plaintiff reviewed marketing brochures, viewed

12    television commercials and/or heard radio commercials about the qualities of the Ford Focus.

13    Plaintiff also relied on Ford's reputation as an established and experienced auto manufacturer.

14    Plaintiff further relied on the statements made during the sales process by Ford's agents and within

15    the marketing brochures provided by Ford. However, Ford and its authorized agents did not publicly

16    or privately disclose to Plaintiff any information about the Transmission Defect. These omissions

17    were material to Plaintiff's decision to purchase the Vehicle. Had Ford and/or its authorized agents

18    publicly or privately disclosed the Transmission Defect before Plaintiff purchased the Vehicle,

19    Plaintiff would have been aware of such disclosures, and would not have purchased the Vehicle.

20        73.    On or around August 24, 2014, Plaintiff delivered the Vehicle to

21    Defendant Porterville Ford, an authorized Ford repair facility, for repair. Plaintiff complained that

22    the Vehicle's transmission slipped and that the check engine light was on. Porterville Ford's repair

23    facility technicians swapped motors 1 and 2, replaced the transmission control module ("TCM"),

24    and adjusted the intake air tube. After five (5) days at the repair facility, the Vehicle was returned to

25    Plaintiff and the service technician represented to Plaintiff that the Vehicle had been repaired and

26    was safe to drive. Plaintiff reasonably relied on this representation by the service technician at the

27    authorized Ford repair facility. All repairs to the transmission were covered under Ford's written

28    warranty.

74.     On or around October 24, 2014, Plaintiff delivered the Vehicle to a different authorized Ford repair facility for repair, with complaints of shuddering on take-off and a delay when switching from second to third gear. The repair facility technicians verified Plaintiff's shudder concerns. The technicians reprogrammed the Powertrain Control Module ("PCM") and TCM, and replaced the clutch. When the Vehicle was returned to Plaintiff, the service technician represented to Plaintiff that the Vehicle had been repaired and was safe to drive. Plaintiff reasonably relied on this representation by the service technician at the authorized Ford repair facility. All repairs were covered under Ford's written warranty.

75.     On or around April 28, 2017, Plaintiff again delivered the Vehicle to Defendant Porterville Ford for repair.  Plaintiff again complained about the transmission shuddering while taking off.  Porterville Ford's repair facility technicians replaced the clutch, updated the PCM and TCM, and performed adaptive learning. The Vehicle was returned to Plaintiff five (5) days later, and Porterville Ford's service technician represented to Plaintiff that the Vehicle had been repaired and was safe to drive. Plaintiff reasonably relied on this representation by the service technician at the authorized Ford repair facility.  All repairs were covered under Ford's written warranty.

76.     On or around August 17, 2017, Plaintiff again delivered the Vehicle to Defendant Porterville Ford for repair.  Plaintiff complained of a rattling noise from the left front wheel when the Vehicle started. Porterville Ford's repair facility technicians tightened the motor mount bracket. The Vehicle was returned to Plaintiff two (2) days later, and Porterville Ford's service technician represented to Plaintiff that the Vehicle had been repaired and was safe to drive. Plaintiff reasonably relied on this representation by the service technician at the authorized Ford repair facility.  All repairs were covered under Ford's written warranty.

### All Statute of Limitations Periods are Tolled by the Discovery Rule and the Doctrine of Fraudulent Concealment

77.     Ford misrepresented the qualities of the transmission in the Vehicle to Plaintiff at the time of the sale of the vehicle.  Ford also concealed the fact that the transmission was defective.

78.     Ford continued to misrepresent its ability to repair the vehicle in conformity with the warranty throughout the warranty period.

-15-

Vanni v. Ford - COMPLAINT

1   79.   At all relevant times, Ford was aware of the defects in the Powershift transmission.

2   80.   As described in more detail above, as early as 2010, Ford began issuing significant

3   technical service bulletins to its authorized dealers explaining the widespread issues with the

4   Powershift transmission. At no point prior to the sale of the vehicle to Plaintiff or during Plaintiff's

5   ownership of the Vehicle did Ford or an authorized dealer ever inform Plaintiff of the ongoing defect

6   or the fact that Plaintiff's Vehicle was not actually equipped with an automatic transmission.

7   81.   Ford had a duty to disclose the concealed facts alleged above because Ford knew that

8   Plaintiff did not know a material fact and further knew that such facts were not readily accessible to

9   the Plaintiff because Ford actively concealed those facts.

10   82.   Ford had a duty to disclose the concealed facts alleged above because Ford made

11   misrepresentations in its marketing materials and window stickers and through its authorized sales

12   representatives about the quality, characteristics, and safety of the Powershift transmission.

13   83.   Ford had a duty to disclose the concealed facts alleged above because Ford actively

14   concealed material facts in order to induce a false belief.

15   84.   Ford intended for Plaintiff to rely on those misrepresentations to conceal the fact that the

16   defective Powershift Transmission could not be repaired.

17   85.   Prior to the sale of the Vehicle, and at all times thereafter, Defendant therefore failed to

18   disclose the existence of the vehicle's inherent defects to Plaintiff, and Defendant failed to disclose

19   its inability to repair these inherent defects, which prevented the Vehicle from conforming to its

20   applicable warranties. In effect, after the sale of the Vehicle, Defendant fraudulently concealed from

21   purchasers, including Plaintiff, the fact that the dealers were not properly repairing the defects to the

22   Powershift transmission, and knew that the limited work that Ford had authorized its dealerships to

23   perform on those vehicles would not properly repair them. Ford also continued to conceal the fact

24   that Plaintiff's vehicle was not in fact equipped with an automatic transmission as advertised.

25   86.   On July 7, 2017, Defendant mailed Plaintiff class notice as a putative class member in

26   the class action, *Vargas v. Ford Motor Company*, United States District Court, Central District of

27   California, Case No. 2:12-cv-08388 ABC (FFMx). Plaintiff received this notice shortly thereafter.

28   This date was the earliest date that Plaintiff could have had any sort of notice of the facts which give

rise to Plaintiff's fraud causes of action. Ford did not disclose any of this information prior to the sale of the vehicle to Plaintiff or at any earlier date during ownership. Accordingly, Plaintiff could not have discovered his claims prior to July 7, 2017. Plaintiff could not, despite reasonable and diligent investigation, have discovered such on an earlier date because of Ford's fraudulent misrepresentations and concealment of the defects in the PowerShift transmission in Plaintiff's vehicle, as previously alleged above. Additionally, the repeated false assurances of Ford and its service dealership agents made to Plaintiff, on which Plaintiff reasonably relied, that Ford had and would repair any problems with the transmission in Plaintiff's vehicle that occurred during the express warranty period and that said problems would not be repeating further delayed Plaintiff's discovery of his claims.   The statute of limitations for each of Plaintiff's claims against Ford was therefore tolled under the delayed discovery rule and the doctrine of fraudulent concealment until Plaintiff could have first discovered on or around July 7, 2017, that Ford had misrepresented the characteristics of the transmission and concealed the known defects during the ownership of the Vehicle.

87.    Because Ford failed to disclose these foregoing facts to Plaintiff, all statute of limitations periods with respect to sale of the Vehicle were tolled by the doctrines of fraudulent concealment, the discovery rule, and/or equitable tolling.  As alleged herein, Ford wrongfully concealed the fact (1) that the Vehicle was equipped with a manual transmission (the PowerShift transmission), and (2) that its dealerships were making inadequate repairs that were incapable of addressing the root cause of the Vehicle's malfunctions.

88.    Plaintiff did not discover the operative facts that are the basis of the claims alleged herein because the facts were concealed in confidential and privileged documents, which a consumer would not know about and could not obtain.

89.    No amount of diligence by Plaintiff could have led to the discovery of these facts because they were kept secret by Ford and, therefore, Plaintiff was not at fault for failing to discover these facts.

90.    Plaintiff did not have actual knowledge of facts sufficient to put him on notice.  Plaintiff did not know, nor could have known, about Ford's inability to repair the defects in its PowerShift

-17-

Vanni v. Ford - COMPLAINT

1  transmission because, as alleged above, Ford kept this information highly confidential, and its

2  dealership assured Plaintiff that its repairs were effective.

3  <u>All Statute of Limitations Periods are Tolled by the Tolling Doctrine Established in *American Pipe*</u>
4  <u>& *Construction Co. v. Utah* (1974) 414 U.S. 538 As a Result of the Class Action *Vargas v. Ford*</u>
5  <u>*Motor Company*</u>

6     91.     Plaintiff gave timely notice of Plaintiff's claims against Ford in the present action as

7  putative class members in a class action, *Vargas v. Ford Motor Company*, United States District

8  Court, Central District of California, Case No. 2:12-cv-08388 ABC (FFMx), which was filed on

9  September 28, 2012. That action was filed within three years of the date of Plaintiff's discovery of

10  his claims against Ford in the present action, as previously described in detail above.

11     92.     There is no prejudice to Ford in gathering evidence to defend against Plaintiff's

12  individual claims because the class definition in the class action complaint within which Plaintiff

13  were putative class members and the allegations in the class action lawsuit, *Vargas v. Ford Motor*

14  *Company*, United States District Court, Central District of California, Case No. 2:12-cv-08388 ABC

15  (FFMx), put Ford on notice of the facts that give rise to Plaintiff's individual action, the witnesses

16  necessary for Ford to defend Plaintiff's individual action, and the causes of action against Ford

17  asserted in Plaintiff's individual action.

18     93.     *Vargas v. Ford Motor Company*, United States District Court, Central District of

19  California, Case No. 2:12-cv-08388 ABC (FFMx) alleged the material facts on behalf of Plaintiff as

20  putative class members as are being alleged by Plaintiff in the present individual action.

21     94.     The facts alleged in *Vargas v. Ford Motor Company*, United States District Court,

22  Central District of California, Case No. 2:12-cv-08388 ABC (FFMx) are substantially similar, if not

23  identical to the facts alleged herein.

24     95.     The allegations in *Vargas v. Ford Motor Company*, United States District Court, Central

25  District of California, Case No. 2:12-cv-08388 ABC (FFMx) are based on the same subject matter

26  and similar evidence as the instant complaint. Those allegations concern the same evidence,

27  memories, and witnesses as the subject matter in the instant complaint.

28  ///

96.     The *Vargas* class action certainly protected the efficiency and economy of litigation because that class action is protecting the rights of thousands of consumers nationwide through a single action.  Consumer class actions regarding defective vehicles brought against manufacturers are regularly certified, making a class action lawsuit an efficient means of pursuing such claims.

97.     The tolling of Plaintiff's individual statute of limitations encourages the protection of efficiency and economy in litigation as promoted by the class action devise, so that putative class members would not find it necessary to seek to intervene or to join individually because of fear the class might never be certified or putative class members may subsequently seek to request exclusion.

98.     The running of all statute of limitations on each of Plaintiff's claims asserted against Ford in the present action were therefore tolled by *American-Pipe* tolling during the entire pendency of the *Vargas* class action (i.e., from the date on which the *Vargas* class action was filed on September 28, 2012 to the date on which Plaintiff opted out of the *Vargas* class action litigation, on or around August 30, 2017.

<u>All Statute of Limitations Periods are Tolled Under California Law by the Doctrine of Equitable Tolling As a Result of the Class Action *Vargas v. Ford Motor Company*</u>

99.     Plaintiff gave timely notice of Plaintiff's claims against Ford in the present action as putative class members in a class action, *Vargas v. Ford Motor Company*, United States District Court, Central District of California, Case No. 2:12-cv-08388 ABC (FFMx), which was filed on September 28, 2012.  That action was filed within three years of the date of Plaintiff's discovery of his claims against Ford in the present action, as previously described in detail above.

100.    There is no prejudice to Ford in gathering evidence to defend against Plaintiff's individual claims because the class definition in the class action complaint within which Plaintiff were putative class members and the allegations in the class action lawsuit, *Vargas v. Ford Motor Company*, United States District Court, Central District of California, Case No. 2:12-cv-08388 ABC (FFMx), put Ford on notice of the facts that give rise to Plaintiff's individual action, the witnesses necessary for Ford to defend Plaintiff's individual action, and the causes of action against Ford asserted in Plaintiff's individual action.

///

1 · 101. *Vargas v. Ford Motor Company*, United States District Court, Central District of

2 California, Case No. 2:12-cv-08388 ABC (FFMx) alleged the material facts on behalf of Plaintiff as

3 putative class members as are being alleged by Plaintiff in the present individual action.

4 102. The facts alleged in *Vargas v. Ford Motor Company*, United States District Court,

5 Central District of California, Case No. 2:12-cv-08388 ABC (FFMx) are substantially similar, if not

6 identical to the facts alleged herein.

7 103. The allegations in *Vargas v. Ford Motor Company*, United States District Court, Central

8 District of California, Case No. 2:12-cv-08388 ABC (FFMx) are based on the same subject matter

9 and similar evidence as the instant complaint. Those allegations concern the same evidence,

10 memories, and witnesses as the subject matter in the instant complaint.

11 104. The *Vargas* class action certainly protected the efficiency and economy of litigation

12 because that class action is protecting the rights of thousands of consumers nationwide through a

13 single action. Consumer class actions regarding defective vehicles brought against manufacturers

14 are regularly certified, making a class action lawsuit an efficient means of pursuing such claims.

15 105. Plaintiff acted reasonably and in good faith in filing the instant action. Shortly after

16 discovering Ford's fraudulent behavior, Plaintiff filed the instant action to pursue his individual

17 rights without delay.

18 106. The tolling of Plaintiff's individual statute of limitations encourages the protection of

19 efficiency and economy in litigation as promoted by the class action devise, so that putative class

20 members would not find it necessary to seek to intervene or to join individually because of fear the

21 class might never be certified or putative class members may subsequently seek to request exclusion.

22 107. The running of all statute of limitations on each of Plaintiff's claims asserted against Ford

23 in the present action were therefore tolled by *American-Pipe* tolling during the entire pendency of

24 the *Vargas* class action (i.e., from the date on which the *Vargas* class action was filed on September

25 28, 2012 to the date on which Plaintiff opted out of the *Vargas* class action litigation, on or around

26 August 30, 2017.

27 ///

28 ///

**FIRST CAUSE OF ACTION**

**Violation of the Song-Beverly Act – Breach of Express Warranty**

**(Against Ford Only)**

108.    Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

109.    Express warranties accompanied the sale of the vehicle to Plaintiff by which Ford undertook to preserve or maintain the utility or performance of Plaintiff's vehicle or provide compensation if there was a failure in such utility or performance.

110.    The vehicle was delivered to Plaintiff with serious defects and nonconformities to warranty and developed other serious defects and nonconformities to warranty including, but not limited to a transmission.

111.    Pursuant to the Song-Beverly Consumer Warranty Act ("Act") Civil Code sections 1790 *et seq.* the vehicle constitutes "consumer goods" used primarily for family or household purposes, and Plaintiff have used the vehicle primarily for those purposes.

112.    Plaintiff is a "buyer" of consumer goods under the Act.

113.    Defendant Ford is a "manufacturer" and/or "distributor" under the Act.

114.    The foregoing defects and nonconformities to warranty manifested themselves within the applicable express warranty period. The nonconformities substantially impair the use, value and/or safety of the vehicle.

115.    Plaintiff delivered the vehicle to an authorized Ford repair facility for repair of the nonconformities.

116.    Defendant was unable to conform Plaintiff's vehicle to the applicable express warranty after a reasonable number of repair attempts.

117.    Notwithstanding Plaintiff's entitlement, Defendant Ford has failed to either promptly replace the new motor vehicle or promptly make restitution in accordance with the Song-Beverly Act.

118.    By failure of Defendant to remedy the defects as alleged above, or to issue a refund or replacement, Defendant is in breach of its obligations under the Song-Beverly Act.

119.    Under the Act, Plaintiff is entitled to reimbursement of the price paid for the vehicle less that amount directly attributable to use by the Plaintiff prior to discovery of the nonconformities.

120.    Plaintiff is entitled to all incidental, consequential, and general damages resulting from Defendant's failure to comply with their obligations under the Song-Beverly Act.

///

121.    Plaintiff is entitled under the Song-Beverly Act to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees, reasonably incurred in connection with the commencement and prosecution of this action.

122.    Plaintiff is entitled in addition to the amounts recovered, a civil penalty of up to two times the amount of actual damages in that Ford, has willfully failed to comply with its responsibilities under the Act.

### SECOND CAUSE OF ACTION

### Violation of the Song-Beverly Act – Breach of Implied Warranty

### (Against Ford Only)

123.    Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

124.    Ford and its authorized dealership at which Plaintiff purchased the Subject Vehicle had reason to know the purpose of the Subject Vehicle at the time of sale of the Subject Vehicle. The sale of the Subject Vehicle was accompanied by an implied warranty of fitness.

125.    The sale of the Subject Vehicle was accompanied by an implied warranty that the Subject Vehicle was merchantable pursuant to Civil Code section 1792.

126.    The Subject Vehicle was not of the same quality as those generally acceptable in the trade because it was equipped with a defective transmission.

127.    The Subject Vehicle was not fit for the ordinary purpose for which such goods are used because it was equipped with a defective transmission.

128.    The Subject Vehicle did not measure up to the promises or facts stated on the container or label because it was equipped with a defective transmission.

///

129.   The Subject Vehicle did not measure up to the promises or facts stated on the container or label because it was equipped with an automated manual transmission rather than the automatic transmission as labeled.

130.   Plaintiff is entitled to justifiably revoke acceptance of the Subject Vehicle under Civil Code section 1794, *et seq*; Plaintiff hereby revoke acceptance of the Subject Vehicle.

131.   Plaintiff is entitled to replacement or reimbursement pursuant to Civil Code section 1794, *et seq.*

132.   Plaintiff is entitled to rescission of the contract pursuant to Civil Code section 1794, *et seq.* and Commercial Code section 2711.

133.   Plaintiff is entitled to recover any "cover" damages under Commercial Code sections 2711, 2712, and Civil Code section 1794, *et seq.*

134.   Plaintiff is entitled to recover all incidental and consequential damages pursuant to 1794 *et seq* and Commercial Code sections 2711, 2712, and 2713 *et seq.*

### THIRD CAUSE OF ACTION

**Fraudulent Inducement – Concealment**

**(Against Ford Only)**

135.   Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

136. Ford and its agents intentionally concealed and failed to disclose facts relating to the Transmission Defects as explained in detail in paragraphs 13-69.

137.   Defendant was the only party with knowledge of the Transmission Defects because that knowledge came from internal reports such as pre-release testing data, customer complaints made directly to Defendant, and technical service bulletins.  None of this information was available to the public, nor did Defendant publicly or privately disclose any of the information to Plaintiff.  Ford had exclusive knowledge of the defect as described in detail in paragraphs 45-52.

138. Ford actively concealed information from the public, preventing Plaintiff from discovering any of the concealed facts as described in detail in paragraphs 53-69.

///

-23-

Vanni v. Ford - COMPLAINT

139.   Prior to the date of sale, on the date of sale, and on the date of each of the repair attempts, Defendant had an opportunity to disclose to Plaintiff, but instead concealed from and failed to disclose to Plaintiff, any of the known irreparable issues with the Vehicle.

140.   Ford intended to deceive Plaintiff by concealing the known issues with the PowerShift Transmission, including the Transmission Defect, in an effort to sell the Vehicle at a maximum price.

141.   Ford knew of the specific transmission issues affecting the Vehicle, including the Transmission Defect, prior to the sale of the Vehicle.  For example, in 2010, Ford released a TSB after months of research relating to "concerns such as no engage or intermittent no engage in Drive or Reverse when shifting from Park to Drive or Reverse" for certain vehicles equipped with the PowerShift Transmission.  Plaintiff's vehicle was sold after Ford acknowledged these problems in a TSB without any sort of disclosure being made to the Plaintiff.  When Plaintiff experienced repeated problems with the shifting of the transmission in the Vehicle, and at each time Plaintiff brought the Vehicle to Ford's authorized repair facility for evaluation and repair, Ford and its agents continued to conceal the known Transmission Defect and repeatedly represented to Plaintiff that it was able to fix the issue.

142.   Plaintiff did not know about the Transmission Defects at the time of sale.  Plaintiff also did not know of the irreparable nature of the problems at the time of any of the repair attempts because Ford and its agents repeatedly represented that it was able to fix the vehicle upon return of the Vehicle to Plaintiff.

143.   Had Ford and/or its agents publicly or privately disclosed the Transmission Defect to Plaintiff at or prior to the sale, Plaintiff would not have purchased the Vehicle.

144.   Plaintiff was harmed by Defendant's concealment of the Transmission Defect because Plaintiff was induced to enter into the sale of a vehicle that Plaintiff would not have otherwise purchased.

145.   Defendant's concealment of the defects was a substantial factor in causing Plaintiff's harm.

///

///

-24-

Vanni v. Ford - COMPLAINT

**FOURTH CAUSE OF ACTION**

**Fraudulent Inducement – Intentional Misrepresentation**

**(Against Ford Only)**

146. Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

147. Ford drafted, produced, and distributed marketing brochures to the public containing factual representations about the PowerShift Transmission. Ford's marketing brochure for the Vehicle represented the PowerShift Transmission had the following qualities:

> a. "With the available PowerShift 6-speed transmission in Focus, you get the performance of a manual. From an automatic. It delivers seamless gear changes for amazing responsiveness. Most of all, it gives you all that while only sipping a gallon of gas for every 40 highway miles."

148. Unfortunately, the Vehicle as delivered to Plaintiff had extremely poor handling on all roads, as Plaintiff's drive was repeatedly interrupted by jerky shifts and hesitation. Plaintiff's Vehicle was also not equipped with an "automatic" transmission, contrary to Ford's suggestion that the transmission is a traditional "automatic." Plaintiff's Vehicle in fact contained an unproven automated dual clutch manual transmission. Plaintiff's Vehicle did not have seamless gear changes – it experienced jerky gear changes and hesitation between shifts, which necessitated several repairs and repeated reprogramming of the transmission control module – none of which were sufficient to resolve the Transmission Defect.

149. Ford made such representations regarding PowerShift Transmission in the 2012 Ford Focus despite its extensive internal knowledge of the Transmission Defect and other problems. Ford's knowledge of the Transmission Defect is laid out in detail in paragraphs 45-52.

150. Ford informed its dealers and authorized service facilities and personnel, about common behavior characteristics of the PowerShift Transmission in July 2011. In a memo with instructions sent to Ford dealers and authorized service personnel, Ford noted that some of the common characteristics of the PowerShift Transmission include double clicking metal sounds, coast down whine, low speed grinding, and reverse gear whine. Despite this admission by Ford to its dealers,

repair facilities, and agents, Ford continued to represent to the public that the PowerShift Transmission offered "great handling on all roads," and "the performance of a manual," and seamless gear changes for amazing responsiveness," a wildly different picture from the reality. Ford made the statements in its marketing brochures recklessly and without regard for their truth.

151. In addition, Ford misrepresented the type of transmission equipped in the Vehicle. Throughout its marketing brochure, Ford states that the vehicle is equipped with a 6-speed automatic transmission. That representation is false. The vehicle is actually equipped with the Ford PowerShift Transmission, which is in fact a dual clutch transmission, which operates using direct mechanical engagement and disengagement similar to a manual transmission. This information is material for a consumer to know in making a purchasing decision, because unlike a traditional automatic transmission, Ford's PowerShift dual clutch transmission powers the drive wheels through a clutch, rather than a torque converter. The use of a clutch can result in a substantially jerkier ride than that produced using a torque converter, particularly in an unproven design. Plaintiff would not have purchased the Vehicle had Plaintiff known the vehicle's transmission technology would cause the drive to be jerky, unreliable, and dangerous as a result of the unproven dual-clutch (rather than automatic) system.

152. Defendants intended that Plaintiff rely on the representations made in the marketing brochure related to the transmission in inducing Plaintiff to purchase the Vehicle.

153. Plaintiff reasonably relied on Defendant's representations related to the transmission being "automatic" and providing a smooth ride, because Ford was the manufacturer of the vehicle and claimed to have performed and relied upon extensive pre-release testing of the PowerShift Transmission. Ford was in a superior position of knowledge.

154. Plaintiff was harmed by purchasing a vehicle that Plaintiff would not have purchased had they known the true facts about the transmission, and the Transmission Defects, affecting it.

155. Plaintiff's reliance on Defendants' representations about the transmission qualities was a substantial factor in Plaintiff's harm, as Ford and its agents were the exclusive source of information about the qualities of the transmission.

///

## FIFTH CAUSE OF ACTION

### Fraudulent Inducement – Negligent Misrepresentation

### (Against Ford Only)

156.    Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

157.    At the time Ford made the misrepresentations identified in paragraph 13-69 above, they had no reasonable grounds for believing the representations to be true, because Ford was simultaneously issuing internal memoranda to its agents and dealerships about the characteristics of the PowerShift Transmission causing "a loss of power, hesitation, surge, or lack of throttle response while driving." None of those characteristics can be reasonably construed to provide "great handling on all roads," "seamless gear changes," or "amazing responsiveness," as the PowerShift Transmission was described to the Plaintiff in marketing materials.  Ford's knowledge of the Transmission Defect is outlined in more detail in paragraphs 45-52.

## SIXTH CAUSE OF ACTION

### Negligent Repair

### (Against Porterville Ford Only)

158.    Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

159.    Plaintiff delivered the Subject Vehicle to Defendant Porterville Ford for repair of on numerous occasions.

160.    Porterville Ford owed a duty to Plaintiff to use ordinary care and skill in storage, preparation and repair of the Subject Vehicle in accordance with industry standards.

161.    Porterville Ford breached its duty to Plaintiff to use ordinary care and skill by failing to properly store, prepare and repair of the Subject Vehicle in accordance with industry standards.

162.    Porterville Ford's negligent breach of its duties owed to Plaintiff was a proximate cause of Plaintiff's damages.

///

///

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Ford, as follows:

    a.  For general, special and actual damages according to proof at trial;

    b.  For rescission of the purchase contract and restitution of all monies expended;

    c.  For diminution in value;

    d.  For incidental and consequential damages according to proof at trial;

    e.  For civil penalty in the amount of two times Plaintiff's actual damages;

    f.  For prejudgment interest at the legal rate;

    g.  For punitive damages pursuant to Civil Code §3294;

    h.  For reasonable attorney fees and costs of suit; and

    i.  For such other relief as the Court deems just and proper under the circumstances.

Dated: 2/2/18

                                      KNIGHT LAW GROUP, LLP

                                      STEVE MIKHOV (SBN 224676)
                                      Attorney for Plaintiff,
                                      CHRISTOPHER J. VANNI

Plaintiff CHRISTOPHER J. VANNI hereby demands trial by jury in this action.

-28-

Vanni v. Ford - COMPLAINT

# EXHIBIT 1

## RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE
### (WITH ARBITRATION PROVISION)

| DEAL 111281 | | | | |
|---|---|---|---|---|
| Dealer Number 238 | Contract Number | R.O.S. Number | | Stock Number 3K68382 |

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer (Name and Address) (Including County and Zip Code) | Creditor-Seller (Name and Address) |
|---|---|---|
| CHRISTOPHER J VANNI<br>1349 LINDA WAY<br>PORTERVILLE CA 93258-2434<br>TULARE COUNTY | | JIM BURKE FORD<br>2001 OAK STREET<br>BAKERSFIELD, CA<br>93301 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used? | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2012 | FORD FOCUS | 87 | 1FAHP3K20CL168302 | ☑ Personal, family or household unless otherwise indicated below.<br>☐ business or commercial. |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 3500.00 |
|---|---|---|---|---|
| 0.00 % | $ 0.00 (e) | $ 22019.45 | $ 22019.45 | $ 24519.45 (i) |

| YOUR PAYMENT SCHEDULE WILL BE: | | |
|---|---|---|
| Number of Payments | Amount of Payments | When Payments Are Due |
| One Payment of | N/A | N/A |
| One Payment of | N/A | N/A |
| Payments | 22019.45 | Monthly, beginning 05/21/12 |
| Payments | N/A | Monthly, beginning N/A |
| One Final Payment | N/A | |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
**Prepayment.** If you pay off your debt early, you may be charged a minimum finance charge.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges and security interest.

### ITEMIZATION OF THE AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)

| 1. Total Cash Price | | |
|---|---|---|
| A. Cash Price of Motor Vehicle and Accessories | $ 20479.41 (A) | |
| Cash Price Vehicle | $ 20314.41 | |
| Cash Price Accessories | $ 165.00 | |
| Other (Nontaxable) N/A | N/A | |
| Describe N/A | | |
| Describe N/A | | |
| B. Document Processing Charge (not a governmental fee) | $ 80.00 (B) | |
| C. Emissions Testing Charge (not a governmental fee) | N/A (C) | |
| D. (Optional) Theft Deterrent Device (to whom paid) N/A | $ N/A (D) | |
| E. (Optional) Theft Deterrent Device (to whom paid) N/A | $ N/A (E) | |
| F. (Optional) Theft Deterrent Device (to whom paid) N/A | $ N/A (F) | |
| G. (Optional) Surface Protection Product (to whom paid) N/A | $ N/A (G) | |
| H. (Optional) Surface Protection Product (to whom paid) N/A | $ N/A (H) | |
| I. Sales Tax (on taxable items in A thru H) | $ 1697.62 (I) | |
| J. Electronic Vehicle Registration or Transfer Charge (not a governmental fee) (to whom paid) CVR | $ 18.60 (J) | |
| K. (Optional) Service Contract (to whom paid) FORD ESP | $ 995.00 (K) | |
| L. (Optional) Service Contract (to whom paid) FORD PREMIUM MA | $ 995.00 (L) | |
| M. (Optional) Service Contract (to whom paid) N/A | $ N/A (M) | |
| N. (Optional) Service Contract (to whom paid) N/A | $ N/A (N) | |
| O. (Optional) Service Contract (to whom paid) N/A | $ N/A (O) | |
| P. Prior Credit or Lease Balance paid by Seller to N/A | (0)$ N/A (P) | |
| (see downpayment and trade-in calculation) N/A | $ N/A (P) | |

### STATEMENT OF INSURANCE

NOTICE: No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit unless your decision to buy or not buy other insurance is a factor in the credit approval process.

#### Vehicle Insurance

| | Term | Premium |
|---|---|---|
| N/A Ded. Comp., Fire & Theft | N/A Mos. | $ N/A |
| N/A Ded. Collision | N/A Mos. | $ N/A |
| Bodily Injury | $ N/A Limits N/A Mos. | $ N/A |
| Property Damage | $ N/A Limits N/A Mos. | $ N/A |
| N/A | N/A Mos. | $ N/A |
| N/A | N/A Mos. | $ N/A |
| Total Vehicle Insurance Premiums | | $ N/A |

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGES IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X _____
Co-Buyer X _____
Seller X JIM BURKE FORD

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

#### Application for Optional Credit Insurance

☐ Credit Life:  ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability (Buyer Only)

| | Term | Premium |
|---|---|---|
| Credit Life | N/A N/A Mos. | $ N/A |
| Credit Disability | N/A Mos. N/A | $ N/A |
| Total Credit Insurance Premiums | | $ N/A (I) |
| Insurance Company Name N/A | | |

Home Office Address N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown above.

You are applying for the credit insurance marked above. Your signature below means that you agree that: (1) You are not eligible for insurance if you have reached your 65th birthday. (2) You are eligible for disability insurance only if you are working for wages or profit 30 hours a week or more on the Effective...

THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION.

YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE

Buyer Signature X

Other Owner Signature X

Guarantor X

Address

Seller Signs JIM BURKE FORD

CUSTOMER/TRUTH IN LENDING COPY

ELECTRONICALLY FILED
2/5/2018 8:00 AM
Kern County Superior Court
Terry McNally
By Vanessa Cofield, Deputy

KNIGHT LAW GROUP LLP
Steve Mikhov (SBN 224676)
1801 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

Attorney for Plaintiff,
CHRISTOPHER J. VANNI

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF KERN

| | |
|---|---|
| CHRISTOPHER J. VANNI, | Case No.:  BCV-18-100247 |
| Plaintiff, | Unlimited Jurisdiction |
| vs. | **DEMAND FOR JURY TRIAL** |
| FORD MOTOR COMPANY, a Delaware Corporation; BLUESKY AUTO GROUP, INC., a California Corporation, dba PORTERVILLE FORD; and DOES 1 through 10, inclusive, | *Assigned for All Purposes to the Honorable* |
| Defendants. | Department |

## DEMAND FOR JURY TRIAL

Plaintiff, CHRISTOPHER J. VANNI, hereby demand trial by jury in this action.

Dated: 2/2/18

KNIGHT LAW GROUP, LLP

STEVE MIKHOV (SBN 224676)
Attorney for Plaintiff,
CHRISTOPHER J. VANNI

-1-
**DEMAND FOR JURY TRIAL**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Steve Mikhov (SBN 224676)<br>Knight Law Group, LLP<br>1801 Century Park East, Suite 2300, Los Angeles, CA 90067<br>TELEPHONE NO: (310) 552-2250    FAX NO.: (310) 552-7973<br>ATTORNEY FOR (Name): CHRISTOPHER J. VANNI | **ELECTRONICALLY FILED**<br>**2/5/2018 8:00 AM**<br>**Kern County Superior Court**<br>**Terry McNally**<br>**By Vanessa Cofield, Deputy** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **Kern**
STREET ADDRESS: 1415 Truxtun Avenue
MAILING ADDRESS: Same as above
CITY AND ZIP CODE: Bakersfield, CA 93301
BRANCH NAME: Metropolitan Division

CASE NAME:
CHRISTOPHER J. VANNI v. FORD MOTOR COMPANY, a Delaware Corporation, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | BCV-18-100247 |
| | | | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[X] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [X] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.[X] monetary    b.[ ] nonmonetary; declaratory or injunctive relief    c.[X] punitive
4. Number of causes of action (specify): 6
5. This case [ ] is [X] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 2/2/18

Steve Mikhov
(TYPE OR PRINT NAME)                                      (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
    Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment (*non-domestic relations*)
    Sister State Judgment
    Administrative Agency Award (*not unpaid taxes*)
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
    Declaratory Relief Only
    Injunctive Relief Only (*non-harassment*)
    Mechanics Lien
    Other Commercial Complaint Case (*non-tort/non-complex*)
    Other Civil Complaint (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

# EXHIBIT B

1  SPENCER P. HUGRET (SBN 240424)
   shugret@grsm.com
2  ROBERT C. RODRIGUEZ (SBN 224254)
   rrodriguez@grsm.com
3  GORDON & REES SCULLY MANSUKHANI  LLP
   Embarcadero Center West
4  275 Battery Street, Suite 2000
   San Francisco, CA  94111
5  Telephone:  (415) 986-5900
   Facsimile:  (415) 986-8054
6
7  Attorneys for Defendants
   FORD MOTOR COMPANY and
   BLUESKY AUTO GROUP, INC. dba
8  PORTERVILLE FORD

9

10                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                    **IN AND FOR THE COUNTY OF KERN**

12

13

   CHRISTOPHER J. VANNI,                )    CASE NO. BCV-18-100247
14                                       )
                          Plaintiff,     )    **DEFENDANT FORD MOTOR**
15                                       )    **COMPANY'S ANSWER TO**
        vs.                              )    **PLAINTIFF'S COMPLAINT**
16                                       )
   FORD MOTOR COMPANY, a Delaware        )
17 Corporation; BLUESKY AUTO GROUP, INC.,)
   a California Corporation, dba PORTERVILLE )    Complaint Filed:  February 5, 2018
18 FORD; and DOES 1 through 10, inclusive,)
                                         )
19                       Defendants.     )
                                         )
20 _____ )

21

22        Defendant FORD MOTOR COMPANY ("Ford"), for itself alone and for no other

23 parties, hereby answers Plaintiffs CHRISTOPHER J. VANNI'S ("Plaintiff") Complaint

24 ("Complaint") as follows:

25        Under the provisions of Code of Civil Procedure section 431.30, Ford denies, generally

26 and specifically, each, every and all of the allegations contained therein, and denies that Plaintiff

27 has or will sustain damages in the sum or sums alleged, or in any other sum or sums, or at all.

28        Further answering the Complaint, and the whole thereof, including each and every cause

*(left margin, vertical text)* **Gordon Rees Scully Mansukhani, LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA  94111**

of action contained therein, Ford denies that Plaintiff has or will sustain any injury, damage or loss, if any, by reason of any act or omission, fault or negligence on the part of Ford, their agents, servants and employees, or any of them.

## SEPARATE AFFIRMATIVE DEFENSES

For further and separate answer to the Complaint and by way of affirmative defense, Ford alleges as follows:

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State Cause of Action)

a.    Plaintiff's Complaint, and each and every cause of action alleged therein, fails to state facts sufficient to constitute a cause of action against Ford and Ford denies that Plaintiff was damaged in any sum or sums, or at all.

## SECOND AFFIRMATIVE DEFENSE

### (Statute of Limitations)

b.    Ford is informed and believes, and on that basis alleges, that some or all of Plaintiff's claims may be barred by the statute of limitations, including but not limited to limitations contained within Commercial Code section 2725, Code of Civil Procedure sections 338 and 340, and Civil Code section 1783.

## THIRD AFFIRMATIVE DEFENSE

### (Estoppel)

c.    Plaintiff is estopped from obtaining the relief sought, or pursing any of the claims raised or causes of actions contained in the Complaint, by virtue of his acts, failures to act, conduct, representations, admissions, and the like.

## FOURTH AFFIRMATIVE DEFENSE

### (Waiver)

d.    Plaintiff has waived his rights to the claims, causes of action and relief sought in this Complaint against Ford, by virtue of his acts, failures to act, conduct, representations, admissions, and the like.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

**FIFTH AFFIRMATIVE DEFENSE**

**(Laches)**

e.    Plaintiff has unreasonably delayed the commencement of this action to the prejudice of Ford.  Therefore the Complaint, and each and every cause of action alleged therein is barred, in whole or in part, by the doctrine of laches.

**SIXTH AFFIRMATIVE DEFENSE**

**(Economic Loss Rule)**

f.    Plaintiff's causes of action have not accrued because Plaintiff cannot establish that he suffered injury directly from the subject vehicle or products, and therefore Plaintiff's contention that the subject vehicle or products failed to adequately perform their functions are barred by the economic loss rule.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Vehicle Fit for Intended Purpose)**

g.    Ford is informed and believes, and on that basis alleges, that the subject vehicle was fit for providing transportation at all relevant times hereto.  Accordingly, Plaintiff is not entitled to relief for breach of the implied warranty of merchantability.  *American Suzuki Motor Corporation v. Superior Court* (1995) 37 Cal.App.4th 1291.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Duration of Implied Warranty)**

h.    Ford is informed and believes, and on that basis alleges, that some or all of the alleged defects did not arise until more than three months had elapsed since the subject vehicle was sold to Plaintiff.  Accordingly, Plaintiff is not entitled to relief for such concerns under the breach of the implied warranty of merchantability.  Civil Code section 1795.5.

**NINTH AFFIRMATIVE DEFENSE**

**(Lack of Maintenance and Other Exclusions)**

i.    Ford is informed and believes, and on that basis alleges, that Plaintiff and/or others may have improperly cared for and maintained the subject vehicle, and that some of Plaintiff's concerns may have been proximately caused by such lack of maintenance of the

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

subject vehicle or products.  Ford reserves the right to identify additional exclusions which may be applicable.

### TENTH AFFIRMATIVE DEFENSE

### (Unreasonable or Unauthorized Use of Vehicle)

j.    Ford is informed and believes, and on that basis alleges, that some of Plaintiff's concerns may be barred by Plaintiff's unreasonable or unauthorized use of the vehicle.  Civil Code section 1794.3.

### ELEVENTH AFFIRMATIVE DEFENSE

### (No Timely Revocation of Acceptance)

k.    Plaintiff has no restitution remedy under breach of implied warranty because there was no timely revocation of acceptance before a substantial change in the condition of the goods.

### TWELFTH AFFIRMATIVE DEFENSE

### (No Reasonable Number of Attempts to Repair Afforded)

l.    The Complaint and, each and every cause of action therein, does not state facts sufficient to meet the statutory presumption of a reasonable number of repair attempts under the terms of the Civil Code section 1793.22(b).

### THIRTEENTH AFFIRMATIVE DEFENSE

### (Preemption)

m.    The Complaint and, each and every cause of action therein, in whole, or in part, are preempted by the Federal National Traffic and Motor Vehicle Safety Act pursuant to 49 U.S.C. sections 30118 et seq.

### FOURTEENTH AFFIRMATIVE DEFENSE

### (Performance)

n.    Prior to the commencement of this action, Ford fully performed, satisfied and discharged all duties and obligations it may have owed to Plaintiff arising out of any and all agreements, representations or contracts made by it or on its behalf and this action is therefore barred by the provisions of Civil Code section 1473.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(Failure to Abide by Terms of Warranty)**

o.    Claims by Plaintiff of breach of warranty are barred because of Plaintiff's failure to give timely and appropriate notice of any claim of breach of warranty.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(Failure to Use Third-Party Dispute Resolution)**

p.    Ford makes available a qualified third-party dispute resolution process, and therefore, it is entitled to relief under certain provisions of the Song-Beverly Consumer Warranty Act.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(ACCORD AND SATISFACTION)**

q.    Plaintiff is barred from recovery, in whole or in part, on the ground that they are subject to the defense of accord and satisfaction.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

**(Good Faith Evaluation)**

r.    At all times, Ford's evaluation of Plaintiff's repurchase request has been in good faith, consequently, Plaintiff has no claim for civil penalty for any alleged willful violation.

**NINETEENTH AFFIRMATIVE DEFENSE**

**(Improper CLRA Notice)**

s.    Ford is informed and believes, and on that basis alleges, that Plaintiff failed to comply with the notice requirements to assert a cause of action for violation of the Consumer Legal Remedies Act.  Civil Code section 1782(a); *Outboard Marine Corporation v. Superior Court* (1975) 52 Cal.App.3d 30.

**TWENTIETH AFFIRMATIVE DEFENSE**

**(Doctrine of Equitable Abstention)**

t.    Plaintiff's claims for injunctive relief are barred by the doctrine of equitable abstention.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Failure to Notify)

u.      Ford is informed and believes, and on that basis alleges, that Plaintiff has failed to provide timely notice, within a reasonable period of time after discovery of his claims and alleged defects.  As a result, Ford has been damaged and prejudiced.  Therefore the Complaint and each cause of action therein, is barred as a matter of law.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Complete Performance)

v.      Ford has appropriately, completely and fully performed and discharged any and all obligations and legal duties arising out of the matters alleged in the Complaint.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Compliance with Laws)

w.      Ford has complied with all laws and regulations with regard to the subject matter of Plaintiff's Complaint, and is therefore not liable to Plaintiff for any damages they may have sustained, if any.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Good Faith)

x.      At all times relevant and material to this action, Ford acted reasonably and in good faith.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Independent Causes)

y.      The alleged injuries, damages or loss, if any, for which Plaintiff seeks recovery, were the result of causes independent of any purported acts or omissions on the part of Ford, or any of their agents, representatives or employees, thereby eliminating or reducing the alleged liability of Ford.

///

///

///

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (Failure to Inspect)

z.    Ford alleges that Plaintiff's damages, if any, may have been caused by the failure of third parties, unrelated to Ford, to properly inspect the subject vehicle or products, thereby eliminating or reducing the alleged liability of Ford.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### (Failure to Maintain)

aa.    Ford alleges that any and all conditions in the subject vehicle or products described in the Complaint, if any there were, were solely a result of the failure to properly maintain and service the subject vehicle or products, thereby eliminating or reducing the alleged liability of Ford.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### (No Breach)

bb.    Ford alleges that it did not breach any duties to Plaintiff, thereby barring and/or precluding Plaintiff from recovery.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### (No Affirmative Conduct)

cc.    Ford alleges that there was no affirmative conduct on the part of Ford, which allegedly caused or contributed to Plaintiff's alleged injuries and therefore Plaintiff has no cause of action against Ford.

## THIRTIETH AFFIRMATIVE DEFENSE

### (No Substantial Factor)

dd.    Ford alleges that the negligence and other legal fault alleged in the Complaint as against Ford, if any, was not a substantial factor in bringing about Plaintiff's alleged injuries and, therefore, was not a contributing cause.

///

///

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

### THIRTY-FIRST AFFIRMATIVE DEFENSE

#### (Excessive/Speculative Damages)

ee.    Ford alleges that the damages allegedly sustained by Plaintiff, if any, were excessive, exaggerated, unreasonable, speculative, inflated or otherwise unnecessary and/or unrelated to the alleged incident.

### THIRTY-SECOND AFFIRMATIVE DEFENSE

#### (Failure to Mitigate)

ff.    If Plaintiff has suffered any loss, damage or injury, it was directly or proximately caused by and is the result of Plaintiff's conduct and/or his potential failure to mitigate any such loss, damage or injury.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

#### (Disclaimer of Incidental and Consequential Damages)

gg.    Ford is informed and believes, and on that basis alleges, that by the terms of the limited warranty for the subject vehicle at issue, Ford is not liable for incidental or consequential damages.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

#### (No Civil Penalty)

hh.    Ford is informed and believes, and on that basis alleges, that Plaintiff is barred from the recovery of a civil penalty by reason of Plaintiff's failure to serve written notice pursuant to Civil Code section 1794(e)(3).

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

#### (Constitutionality of Punitive Damages)

ii.    The claims of Plaintiff are in contravention of Ford's rights under applicable clauses of the United States and California Constitutions, including without limitation the following provisions:  (a) said claims constitute an impermissible burden on interstate commerce in contravention of Article I, Section 8 of the United States Constitution; (b) said claims contravene the Excessive Fines Clause of the Eighth Amendment of the United States Constitution; (c) said claims violate Ford's right to Due Process under the Fourteenth

Amendment of the United States Constitution; (d) said claims contravene the constitutional prohibition against vague and overbroad laws; and (e) said claims contravene the Due Process Clause of the California Constitution.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

### (Punitive Damages Improperly Pled/Not Recoverable)

jj.     Ford is informed and believes, and on that basis alleges, that Plaintiff has not properly pled a claim for punitive damages and these damages are not recoverable based on the facts contained in Plaintiff's Complaint, or are otherwise barred by the provisions of California Civil Code sections 3294, 3295, and 3296, or such conduct was adopted, ratified or authorized by Ford under California Civil Code section 3294(b).

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

### (Punitive Damages Impermissible For Extra-Territorial Conduct)

kk.     Any award of punitive damages based on anything other than Ford's conduct in connection with the design, manufacture, and sale of the subject vehicle or products that are the subject of this lawsuit would violate the due process clause of the Fourteenth Amendment to the United States Constitution because any other judgment for punitive damages in this case cannot protect Ford against impermissible multiple punishment for the same wrong and against punishment for extra-territorial conduct.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

### (Punitive Damages Unconstitutional)

ll.     Ford is informed and believes, and on that basis alleges, that an award of punitive or exemplary damages to Plaintiff would violate Ford's constitutional rights under the provisions of the United States and California Constitutions, including but not limited to the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the California Constitution because, among other things, (1) any award of punitive or exemplary damages would be grossly out of proportion to the alleged wrongful conduct and purported injury at issue here; (2) there is no legitimate state interest in punishing the alleged wrongful conduct at issue here, or in deterring its possible repetition; (3) the alleged wrongful

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

conduct at issue here is lawful in other jurisdictions; (4) the alleged wrongful conduct at issue here is not sufficiently reprehensible to warrant the imposition of any punitive or exemplary damages; and (5) the criteria for the imposition of punitive or exemplary damage are unconstitutionally vague and uncertain and fail to provide fair notice of what conduct will result in the imposition of such damages.

### THIRTY-NINTH AFFIRMATIVE DEFENSE

### (Punitive Damages -- If Any -- Must Be Limited)

mm.    Ford specifically incorporates by reference, as if fully set forth herein, any and all standards or limitations regarding the determination and enforceability of punitive damages awards as set forth in *State Farm Mutual Automobile Insurance Company v. Campbell* (2003) 123 S.Ct. 1513, and *BMW of North America v. Gore* (1996) 116 S. Ct. 1589.

### FORTIETH AFFIRMATIVE DEFENSE

### (Set Off)

nn.    Ford alleges that if it is established that Ford is in any manner legally responsible for any of the damages claimed by Plaintiff, which is denied, Ford is entitled to a set off of these damages, if any, that resulted from the wrongful acts of Plaintiff and/or others.

### FORTY-FIRST AFFIRMATIVE DEFENSE

### (Spoliation of Evidence)

oo.    The subject vehicle or products identified in the Complaint that were allegedly designed, manufactured and distributed by Ford are missing, have been modified or altered and/or are no longer available for Ford's possession, which impacts Ford's defense in this case.  Ford is therefore entitled to relief from this spoliation, including appropriate jury instructions, admonitions and any other relief afforded by the Court.

### FORTY-SECOND AFFIRMATIVE DEFENSE

### (Fees and Costs)

pp.    Ford is informed and believes, and on that basis alleges, that the Complaint was brought without reasonable cause and without a good faith belief that there was a justifiable controversy under the facts or the law which warranted the filing of the Comnplaint against Ford.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

1  Plaintiff should therefore be responsible for all of Ford's necessary and reasonable attorney's

2  fees and defense costs as permitted by California law.

### FORTY-THIRD AFFIRMATIVE DEFENSE

### (Additional Affirmative Defenses)

5       qq.    Ford reserves its rights to raise and plead additional defenses and/or affirmative

defenses which might become known during the course of discovery, as well as to dismiss any

defenses which, as a result of discovery, are determined to be unsupported by good faith reliance

upon either the facts or the law, or a nonfrivolous argument for the extension, modification, or

reversal of existing law or the establishment of new law.

### PRAYER

11      WHEREFORE, Ford prays for the following relief:

12      1.    That Plaintiff take nothing by reason of his Complaint, and that this action be

dismissed in its entirety with prejudice;

14      2.    That judgment be entered in favor of Ford, on all causes of action;

15      3.    That Ford recover its costs of suit incurred herein as well as attorneys' fees to the

extent permitted by law; and

17      4.    That Ford be awarded such other and further relief as the Court may deem just

and proper.

Dated:  March  6, 2018

GORDON & REES LLP

By: _____

Spencer P. Hugret
Robert. C. Rodriguez
Attorneys for Defendants
FORD MOTOR COMPANY and
BLUESKY AUTO GROUP, INC. dba
PORTERVILLE FORD

*Gordon Rees Scully Mansukhani, LLP*
*275 Battery Street, Suite 2000*
*San Francisco, CA  94111*

-11-

**PROOF OF SERVICE**
*Christopher J. Vanni v. Ford Motor Company, et al.*
Kern County Superior Court Case No.  BCV-18-100247

        I am a resident of the State of California, over the age of eighteen years, and not a party
to the within action.  My business address is: Gordon & Rees LLP 275 Battery Street, Suite
2000, San Francisco, CA  94111.  On the date below, I served the within documents:

**DEFENDANT FORD MOTOR COMPANY'S ANSWER TO PLAINTIFF'S
COMPLAINT**

☐    by transmitting VIA ELECTRONIC MAIL  the document(s) listed above to the email
address(es) set forth below on this date before 5:00 p.m. *(Per agreement of the
parties.)*

☐    by PERSONALLY DELIVERING the document(s) listed above to the Plaintiffs'
Counsel listed below at the deposition of the plaintiff located at 1601 I St., #410,
Modesto, CA 95354 on this date.

☒    by placing the document(s) listed above in a sealed envelope with postage thereon
fully prepaid, in UNITED STATES MAIL in the State of California at San Francisco,
addressed as set forth below.

☐    by placing a true copy thereof enclosed in a sealed envelope, at a station designated
for collection and processing of envelopes and packages for overnight delivery by
FEDEX as part of the ordinary business practices of Gordon & Rees LLP described
below, addressed as follows:

Steve Mikhov, Esq.
Lauren Ungs, Esq.
KNIGHT LAW GROUP, LLP
1801 Century Park East, Suite 2300
Los Angeles, CA  90067-2325
Tel:  (310) 552-2250
Fax:  (310) 552-7973
*Attorneys for the Plaintiff*

        I am readily familiar with the firm's practice of collection and processing correspondence
for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same
day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on
motion of the party served, service is presumed invalid if postal cancellation date or postage
meter date is more than one day after the date of deposit for mailing in affidavit.

        I declare under penalty of perjury under the laws of the State of California that the above
is true and correct.

        Executed on March 6, 2018, at San Francisco, California.

_____
Nicole Croce

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

1135303/32588546v.1

# EXHIBIT C

1  SPENCER P. HUGRET (SBN 240424)
   shugret@grsm.com
2  ROBERT C. RODRIGUEZ (SBN 224254)
   rrodriguez@grsm.com
3  GORDON REES SCULLY MANSUKHANI LLP
   Embarcadero Center West
4  275 Battery Street, Suite 2000
   San Francisco, CA  94111
5  Telephone:  (415) 986-5900
   Facsimile:  (415) 986-8054
6
7  Attorneys for Defendants
   FORD MOTOR COMPANY and
   BLUESKY AUTO GROUP, INC. dba
8  PORTERVILLE FORD

9

          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
10
               **FOR THE COUNTY OF KERN**
11

12  CHRISTOPHER J. VANNI,              )   CASE NO. BCV-18-100247
                                       )   Unlimited Jurisdiction
13                  Plaintiff,         )
                                       )
14        vs.                          )   **DEFENDANT BLUESKY AUTO**
                                       )   **GROUP, INC. dba PORTERVILLE**
15  FORD MOTOR COMPANY, a Delaware     )   **FORD'S ANSWER TO PLAINTIFF'S**
    Corporation; BLUESKY AUTO GROUP,   )   **COMPLAINT**
16  INC., a California Corporation, dba )
    PORTERVILLE FORD; and DOES 1 through )
17  10, inclusive,                     )   Action Filed: February 5, 2018
                                       )
18                  Defendants.        )
    _____)
19

20        Defendant BLUESKY AUTO GROUP, INC. dba PORTERVILLE FORD ("Porterville

21  Ford"), for itself alone and for no other parties, hereby answers Plaintiff CHRISTOPHER J.

22  VANNI'S ("Plaintiff") Complaint ("Complaint") as follows:

23        Under the provisions of Code of Civil Procedure section 431.30, Porterville Ford denies,

24  generally and specifically, each, every and all of the allegations contained therein, and denies

25  that Plaintiff has or will sustain damages in the sum or sums alleged, or in any other sum or

26  sums, or at all.

27        Further answering the Complaint, and the whole thereof, including each and every cause

28  of action contained therein, Porterville Ford denies that Plaintiff has or will sustain any injury,

*Left margin (vertical text):* **Gordon Rees Scully Mansukhani, LLP** / 275 Battery Street, Suite 2000 / San Francisco, CA  94111

1

DEFENDANT BLUESKY AUTO GROUP, INC. DBA PORTERVILLE FORD'S ANSWER TO
PLAINTIFF'S COMPLAINT

damage or loss, if any, by reason of any act or omission, fault or negligence on the part of Porterville, their agents, servants and employees, or any of them.

## SEPARATE AFFIRMATIVE DEFENSES

For further and separate answer to the Complaint and by way of affirmative defense, Porterville Ford alleges as follows:

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State Cause of Action)

1.  Plaintiff's Complaint, and each and every cause of action alleged therein, fails to state facts sufficient to constitute a cause of action against Porterville Ford and Porterville Ford denies that Plaintiff was damaged in any sum or sums, or at all.

## SECOND AFFIRMATIVE DEFENSE

### (Statute of Limitations)

2.  Porterville Ford is informed and believes, and on that basis alleges, that some or all of Plaintiff's claims may be barred by the statute of limitations, including but not limited to limitations contained within Commercial Code section 2725, Code of Civil Procedure sections 338 and 340, and Civil Code section 1783.

## THIRD AFFIRMATIVE DEFENSE

### (Estoppel)

3.  Plaintiff is estopped from obtaining the relief sought, or pursing any of the claims raised or causes of actions contained in the Complaint, by virtue of his acts, failures to act, conduct, representations, admissions, and the like.

## FOURTH AFFIRMATIVE DEFENSE

### (Waiver)

4.  Plaintiff has waived his rights to the claims, causes of action and relief sought in this Complaint against Porterville Ford, by virtue of his acts, failures to act, conduct, representations, admissions, and the like.

///

///

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

2

**Gordon Rees Scully Mansukhani, LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA  94111**

## FIFTH AFFIRMATIVE DEFENSE

### (Laches)

5.       Plaintiff has unreasonably delayed the commencement of this action to the prejudice of Porterville Ford.  Therefore the Complaint, and each and every cause of action alleged therein is barred, in whole or in part, by the doctrine of laches.

## SIXTH AFFIRMATIVE DEFENSE

### (Economic Loss Rule)

6.       Plaintiff's causes of action have not accrued because Plaintiff cannot establish that he suffered injury directly from the subject vehicle or products, and therefore Plaintiff's contention that the subject vehicle or products failed to adequately perform their functions are barred by the economic loss rule.

## SEVENTH AFFIRMATIVE DEFENSE

### (Vehicle Fit for Intended Purpose)

7.       Porterville Ford is informed and believes, and on that basis alleges, that the subject vehicle was fit for providing transportation at all relevant times hereto.  Accordingly, Plaintiff is not entitled to relief for breach of the implied warranty of merchantability.  *American Suzuki Motor Corporation v. Superior Court* (1995) 37 Cal.App.4th 1291.

## EIGHTH AFFIRMATIVE DEFENSE

### (Duration of Implied Warranty)

8.       Porterville Ford is informed and believes, and on that basis alleges, that some or all of the alleged defects did not arise until more than three months had elapsed since the subject vehicle was sold to Plaintiff.  Accordingly, Plaintiff is not entitled to relief for such concerns under the breach of the implied warranty of merchantability.  Civil Code section 1795.5.

## NINTH AFFIRMATIVE DEFENSE

### (Lack of Maintenance and Other Exclusions)

9.       Porterville Ford is informed and believes, and on that basis alleges, that Plaintiff and/or others may have improperly cared for and maintained the subject vehicle, and that some of Plaintiff's concerns may have been proximately caused by such lack of maintenance of the

3

subject vehicle or products.  Porterville Ford reserves the right to identify additional exclusions which may be applicable.

**TENTH AFFIRMATIVE DEFENSE**

**(Unreasonable or Unauthorized Use of Vehicle)**

10.    Porterville Ford is informed and believes, and on that basis alleges, that some of Plaintiff's concerns may be barred by Plaintiff's unreasonable or unauthorized use of the vehicle. Civil Code section 1794.3.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(No Timely Revocation of Acceptance)**

11.    Plaintiff has no restitution remedy under breach of implied warranty because there was no timely revocation of acceptance before a substantial change in the condition of the goods.

**TWELFTH AFFIRMATIVE DEFENSE**

**(No Reasonable Number of Attempts to Repair At Porterville )**

12.    The Complaint and, each and every cause of action therein, does not state facts sufficient to meet the statutory presumption of a reasonable number of repair attempts under the terms of the Civil Code section 1793.22(b).

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Preemption)**

13.    The Complaint and, each and every cause of action therein, in whole, or in part, are preempted by the Federal National Traffic and Motor Vehicle Safety Act pursuant to 49 U.S.C. sections 30118 et seq.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Performance)**

14.    Prior to the commencement of this action, Porterville Ford fully performed, satisfied and discharged all duties and obligations it may have owed to Plaintiff arising out of any and all agreements, representations or contracts made by it or on its behalf and this action is therefore barred by the provisions of Civil Code section 1473.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

DEFENDANT BLUESKY AUTO GROUP, INC. DBA PORTERVILLE FORD'S ANSWER TO PLAINTIFF'S COMPLAINT

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(Failure to Abide by Terms of Warranty)**

15.    Claims by Plaintiff of breach of warranty are barred because of Plaintiff's failure to give timely and appropriate notice of any claim of breach of warranty.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(Failure to Use Third-Party Dispute Resolution)**

16.    Porterville Ford makes available a qualified third-party dispute resolution process, and therefore, it is entitled to relief under certain provisions of the Song-Beverly Consumer Warranty

Act.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(Accord and Satisfaction)**

17.    Plaintiff is barred from recovery, in whole or in part, on the ground that they are subject to the defense of accord and satisfaction.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

**(Good Faith Evaluation)**

18.    At all times, Porterville Ford's evaluation of Plaintiff's repurchase request has been in good faith, consequently, Plaintiff has no claim for civil penalty for any alleged willful violation.

**NINETEENTH AFFIRMATIVE DEFENSE**

**(Improper CLRA Notice)**

19.    Porterville Ford is informed and believes, and on that basis alleges, that Plaintiff failed to comply with the notice requirements to assert a cause of action for violation of the Consumer Legal Remedies Act.  Civil Code section 1782(a); *Outboard Marine Corporation v. Superior Court* (1975) 52 Cal.App.3d 30.

//

//

//

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

5

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

### TWENTIETH AFFIRMATIVE DEFENSE

#### (Doctrine of Equitable Abstention)

20.    Plaintiff's claims for injunctive relief are barred by the doctrine of equitable abstention.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

#### (Failure to Notify)

21.    Porterville Ford is informed and believes, and on that basis alleges, that Plaintiff has failed to provide timely notice, within a reasonable period of time after discovery of his claims and alleged defects.  As a result, Porterville Ford has been damaged and prejudiced. Therefore the Complaint and each cause of action therein, is barred as a matter of law.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

#### (Complete Performance)

22.    Porterville Ford has appropriately, completely and fully performed and discharged any and all obligations and legal duties arising out of the matters alleged in the Complaint.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

#### (Compliance with Laws)

23.    Porterville Ford has complied with all laws and regulations with regard to the subject matter of Plaintiff's Complaint, and is therefore not liable to Plaintiff for any damages they may have sustained, if any.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

#### (Good Faith)

24.    At all times relevant and material to this action, Porterville Ford acted reasonably and in good faith.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

#### (Independent Causes)

25.    The alleged injuries, damages or loss, if any, for which Plaintiff seeks recovery, were the result of causes independent of any purported acts or omissions on the part of Porterville Ford, or any of their agents, representatives or employees, thereby eliminating or

6

1    reducing the alleged liability of Porterville.

2    ## TWENTY-SIXTH AFFIRMATIVE DEFENSE

3    ### (Failure to Inspect)

4    26.    Porterville Ford alleges that Plaintiff's damages, if any, may have been caused by

5    the failure of third parties, unrelated to Porterville Ford, to properly inspect the subject vehicle or

6    products, thereby eliminating or reducing the alleged liability of Porterville Ford.

7

8    ## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

9    ### (Failure to Maintain)

10   27.    Porterville Ford alleges that any and all conditions in the subject vehicle or

11   products described in the Complaint, if any there were, were solely a result of the failure to

12   properly maintain and service the subject vehicle or products, thereby eliminating or reducing the

13   alleged liability of Porterville.

14   ## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

15   ### (No Breach)

16   28.    Porterville Ford alleges that it did not breach any duties to Plaintiff, thereby

17   barring and/or precluding Plaintiff from recovery.

18   ## TWENTY-NINTH AFFIRMATIVE DEFENSE

19   ### (No Affirmative Conduct)

20   29.    Porterville Ford alleges that there was no affirmative conduct on the part of

21   Porterville Ford, which allegedly caused or contributed to Plaintiff's alleged injuries and

22   therefore Plaintiff has no cause of action against Porterville.

23   ## THIRTIETH AFFIRMATIVE DEFENSE

24   ### (No Substantial Factor)

25   30.    Porterville Ford alleges that the negligence and other legal fault alleged in the

26   Complaint as against Porterville Ford, if any, was not a substantial factor in bringing about

27   Plaintiff's alleged injuries and, therefore, was not a contributing cause.

28   ///

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

7

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

### THIRTY-FIRST AFFIRMATIVE DEFENSE

#### (Excessive/Speculative Damages)

31.    Porterville Ford alleges that the damages allegedly sustained by Plaintiff, if any, were excessive, exaggerated, unreasonable, speculative, inflated or otherwise unnecessary and/or unrelated to the alleged incident.

### THIRTY-SECOND AFFIRMATIVE DEFENSE

#### (Failure to Mitigate)

32.    If Plaintiff has suffered any loss, damage or injury, it was directly or proximately caused by and is the result of Plaintiff's conduct and/or his potential failure to mitigate any such loss, damage or injury.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

#### (Disclaimer of Incidental and Consequential Damages)

33.    Porterville Ford is informed and believes, and on that basis alleges, that by the terms of the limited warranty for the subject vehicle at issue, Porterville For  is not liable for incidental or consequential damages.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

#### (No Civil Penalty)

34.    Porterville Ford is informed and believes, and on that basis alleges, that Plaintiff is barred from the recovery of a civil penalty by reason of Plaintiff's failure to serve written notice pursuant to Civil Code section 1794(e)(3).

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

#### (Constitutionality of Punitive Damages)

35.    The claims of Plaintiff are in contravention of Porterville Ford's rights under applicable clauses of the United States and California Constitutions, including without limitation the following provisions:  (a) said claims constitute an impermissible burden on interstate commerce in contravention of Article I, Section 8 of the United States Constitution; (b) said claims contravene the Excessive Fines Clause of the Eighth Amendment of the United States Constitution; (c) said claims violate Porterville's right to Due Process under the Fourteenth

8

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Amendment of the United States Constitution; (d) said claims contravene the constitutional prohibition against vague and overbroad laws; and (e) said claims contravene the Due Process Clause of the California Constitution.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

### (Punitive Damages Improperly Pled/Not Recoverable)

36.    Porterville Ford is informed and believes, and on that basis alleges, that Plaintiff has not properly pled a claim for punitive damages and these damages are not recoverable based on the facts contained in Plaintiff's Complaint, or are otherwise barred by the provisions of California Civil Code sections 3294, 3295, and 3296, or such conduct was adopted, ratified or authorized by Porterville under California Civil Code section 3294(b).

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

### (Punitive Damages Impermissible For Extra-Territorial Conduct)

37.    Any award of punitive damages based on anything other than Porterville Ford's conduct in connection with the design, manufacture, and sale of the subject vehicle or products that are the subject of this lawsuit would violate the due process clause of the Fourteenth Amendment to the United States Constitution because any other judgment for punitive damages in this case cannot protect Porterville Ford against impermissible multiple punishment for the same wrong and against punishment for extra-territorial conduct.

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

### (Punitive Damages Unconstitutional)

38.    Porterville Ford is informed and believes, and on that basis alleges, that an award of punitive or exemplary damages to Plaintiff would violate Porterville Ford's constitutional rights under the provisions of the United States and California Constitutions, including but not limited to the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the California Constitution because, among other things, (1) any award of punitive or exemplary damages would be grossly out of proportion to the alleged wrongful conduct and purported injury at issue here; (2) there is no legitimate state interest in punishing the alleged wrongful conduct at issue here, or in deterring its possible

9

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

repetition; (3) the alleged wrongful conduct at issue here is lawful in other jurisdictions; (4) the alleged wrongful conduct at issue here is not sufficiently reprehensible to warrant the imposition of any punitive or exemplary damages; and (5) the criteria for the imposition of punitive or exemplary damage are unconstitutionally vague and uncertain and fail to provide fair notice of what conduct will result in the imposition of such damages.

<u>**THIRTY-NINTH AFFIRMATIVE DEFENSE**</u>

**(Punitive Damages -- If Any -- Must Be Limited)**

39.    Porterville Ford specifically incorporates by reference, as if fully set forth herein, any and all standards or limitations regarding the determination and enforceability of punitive damages awards as set forth in *State Farm Mutual Automobile Insurance Company v. Campbell* (2003) 123 S.Ct. 1513, and *BMW of North America v. Gore* (1996) 116 S. Ct. 1589.

<u>**FORTIETH AFFIRMATIVE DEFENSE**</u>

**(Set Off)**

40.    Porterville Ford alleges that if it is established that Porterville is in any manner legally responsible for any of the damages claimed by Plaintiff, which is denied, Porterville Ford is entitled to a set off of these damages, if any, that resulted from the wrongful acts of Plaintiff and/or others.

<u>**FORTY-FIRST AFFIRMATIVE DEFENSE**</u>

**(Spoliation of Evidence)**

41.    The subject vehicle or products identified in the Complaint that were allegedly designed, manufactured and distributed by Porterville Ford are missing, have been modified or altered and/or are no longer available for Porterville Ford's possession, which impacts Porterville Ford's defense in this case.  Porterville Ford is therefore entitled to relief from this spoliation, including appropriate jury instructions, admonitions and any other relief  Porterville Ford by the Court.

//

//

//

10

1

2        **FORTY-SECOND AFFIRMATIVE DEFENSE**

3               **(Fees and Costs)**

4        42.     Porterville Ford is informed and believes, and on that basis alleges, that the

5 Complaint was brought without reasonable cause and without a good faith belief that there was a

6 justifiable controversy under the facts or the law which warranted the filing of the Complaint

7 against Porterville Ford.  Plaintiff should therefore be responsible for all of Porterville Ford's

8 necessary and reasonable attorney's fees and defense costs as permitted by California law.

9        **FORTY-THIRD AFFIRMATIVE DEFENSE**

10              **(Additional Affirmative Defenses)**

11       43.     Porterville Ford reserves its rights to raise and plead additional defenses and/or

12 affirmative defenses which might become known during the course of discovery, as well as to

13 dismiss any defenses which, as a result of discovery, are determined to be unsupported by good

14 faith reliance upon either the facts or the law, or a nonfrivolous argument for the extension,

15 modification, or reversal of existing law or the establishment of new law.

16 //

17 //

18 //

19 //

20 //

21 //

22 //

23 //

24 //

25 //

26 //

27 //

28 //

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

DEFENDANT BLUESKY AUTO GROUP, INC. DBA PORTERVILLE FORD'S ANSWER TO PLAINTIFF'S COMPLAINT

**PRAYER**

WHEREFORE, Porterville Ford prays for the following relief:

1.      That Plaintiff take nothing by reason of his Complaint, and that this action be dismissed in its entirety with prejudice;

2.      That judgment be entered in favor of Porterville Ford, on all causes of action;

3.      That Porterville Ford recover its costs of suit incurred herein as well as attorneys' fees to the extent permitted by law; and

4.      That Porterville Ford be awarded such other and further relief as the Court may deem just and proper.


Dated:   March 6, 2018

GORDON REES SCULLY MANSUKHANI LLP

By: _____

Spencer P. Hugret
Robert C. Rodriguez
Attorneys for Defendants
FORD MOTOR COMPANY and
BLUESKY AUTO GROUP, INC. dba
PORTERVILLE FORD


**DEMAND FOR JURY TRIAL**

Defendant PORTERVILLE FORD hereby demands a jury trial as to all issues, claims, and causes of action for which a jury trial is allowed.


Dated:   March 6, 2018

GORDON REES SCULLY MANSUKHANI LLP

By: _____

Spencer P. Hugret
Robert C. Rodriguez
Attorneys for Defendants
FORD MOTOR COMPANY and
BLUESKY AUTO GROUP, INC. dba
PORTERVILLE FORD

DEFENDANT BLUESKY AUTO GROUP, INC. DBA PORTERVILLE FORD'S ANSWER TO PLAINTIFF'S COMPLAINT

**PROOF OF SERVICE**
*Christopher J. Vanni v. Ford Motor Company, et al.*
Kern County Superior Court Case No. BCV-18-100247

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is: Gordon & Rees LLP 275 Battery Street, Suite 2000, San Francisco, CA  94111.  On the below-mentioned date, I served the within documents:

**DEFENDANT BLUESKY AUTO GROUP, INC. dba PORTERVILLE FORD'S ANSWER TO PLAINTIFF'S COMPLAINT**

☐  by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐  by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at , addressed as set forth below.

☐  by placing a true copy thereof enclosed in a sealed envelope, at a station designated for collection and processing of envelopes and packages for overnight delivery by FedEx as part of the ordinary business practices of Gordon & Rees LLP described below, addressed as follows:

Steve Mikhov, Esq.
Lauren Ungs, Esq.
**KNIGHT LAW GROUP, LLP**
1801 Century Park East, Suite 2300
Los Angeles, CA  90067-2325
Tel:  (310) 552-2250
Fax:  (310) 552-7973
Email: marko@omlawllp.com
Email: laurenu@omlawllp.com
*Attorneys for Plaintiff*

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on March 6, 2018at San Francisco, California.

_____
Nicole Croce

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

1149912/36782226v.1